# RUMSFELD, SECRETARY OF DEFENSE *v.* PADILLA ET AL.

No. 03–1027.   Argued April 28, 2004—Decided June 28, 2004

428

*Deputy Solicitor General Clement* argued the cause for petitioner. With him on the briefs were *Solicitor General Olson, Sri Srinivasan,* and *Jonathan L. Marcus.*

*Jennifer S. Martinez* argued the cause for respondents. With her on the brief were *Donna R. Newman, Andrew G. Patel, Jonathan M. Freiman, David W. DeBruin, William M. Hohengarten,* and *Matthew Hersh.**

---

*Briefs of *amici curiae* urging reversal were filed for the Commonwealth of Virginia by *Jerry W. Kilgore,* Attorney General of Virginia, *William H. Hurd,* State Solicitor, *Maureen Riley Matsen* and *William E. Thro,* Deputy State Solicitors, *Alison P. Landry,* Senior Assistant Attorney General, and *Courtney M. Malveaux* and *Russell E. McGuire,* Assistant Attorneys General; for the American Center for Law & Justice by *Jay Alan Sekulow, Thomas P. Monaghan, Stuart J. Roth, Colby M. May, James M. Henderson, Sr., Joel H. Thornton,* and *Robert W. Ash;* for the Cato Institute by *Timothy Lynch;* for the Criminal Justice Legal Foundation by *Kent S. Scheidegger;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo* and *Richard A. Samp.*

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Steven R. Shapiro, Sharon M. McGowan, Lucas Guttentag, Robin L. Goldfaden, Arthur N. Eisenberg, Arthur H. Bryant,* and *Rebecca E. Epstein;* for the Association of the Bar of the City of New York et al. by *Joseph Gerard Davis;* for the Beverly Hills Bar Association et al. by *Bridget Arimond, Stephen F. Rohde,* and *Marc J. Poster;* for the Center for National Security Studies et al. by *John Payton, Seth P. Waxman, Paul R. Q. Wolfson, Kate Martin,* and *Joseph Onek;* for Global Rights by *James F. Fitzpatrick, Kathleen A. Behan,* and *Gay J. McDougall;* for Others Are Us et al. by *Jonathan D. Wallace;* for the Rutherford Institute et al. by *Carter G. Phillips, Mark E. Haddad, Joseph R. Guerra,* and *Elliot M. Mincberg;* for the Spartacist League et al. by *Rachel H. Wolkenstein;* for Bruce A. Ackerman et al. by *Jules Lobel, Bar-*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent Jose Padilla is a United States citizen detained by the Department of Defense pursuant to the President's determination that he is an "enemy combatant" who conspired with al Qaeda to carry out terrorist attacks in the United States. We confront two questions: First, did Padilla properly file his habeas petition in the Southern District of New York; and second, did the President possess authority to detain Padilla militarily. We answer the threshold question in the negative and thus do not reach the second question presented.

Because we do not decide the merits, we only briefly recount the relevant facts. On May 8, 2002, Padilla flew from Pakistan to Chicago's O'Hare International Airport. As he stepped off the plane, Padilla was apprehended by federal agents executing a material witness warrant issued by the United States District Court for the Southern District of

bara Olshansky, Nancy Chang, and Shayana Kadidal; for Susan Akram et al. by Daniel Kanstroom; for Philip Alston et al. by David N. Rosen, Homer E. Moyer, Jr., and Michael T. Brady; for the Honorable John Conyers, Jr., et al. by Brian S. Koukoutchos; for Samuel R. Gross et al. by Jonathan L. Hafetz, Lawrence S. Lustberg, and Michael J. Wishnie; for Louis Henkin et al. by Donald Francis Donovan, Carl Micarelli, and J. Paul Oetken; for Fred Korematsu et al. by Arturo J. González and Jon B. Streeter; and for Janet Reno et al. by Robert S. Litt and Theodore D. Frank.

Briefs of amici curiae were filed for the National Association of Criminal Defense Lawyers et al. by Donald G. Rehkopf, Jr., and Lisa B. Kemler; for the Public Defender Service for the District of Columbia by Catharine F. Easterly, Giovanna Shay, and Timothy P. O'Toole; for William J. Aceves et al. by Linda A. Malone and Jordan J. Paust; for Payam Akhavan et al. by Allison Marston Danner; for the Honorable Shirley M. Hufstedler et al. by Robert P. LoBue; and for David J. Scheffer et al. by Mr. Scheffer, pro se.

A brief of amici curiae urging affirmance in No. 03–6696, Hamdi et al. v. Rumsfeld, Secretary of Defense, et al., post, p. 507, and reversal in No. 03–1027 was filed for Senator John Cornyn et al. by Senator Cornyn, pro se.

New York (Southern District) in connection with its grand jury investigation into the September 11th terrorist attacks. Padilla was then transported to New York, where he was held in federal criminal custody. On May 22, acting through appointed counsel, Padilla moved to vacate the material witness warrant.

Padilla's motion was still pending when, on June 9, the President issued an order to Secretary of Defense Donald H. Rumsfeld designating Padilla an "enemy combatant" and directing the Secretary to detain him in military custody. App. D to Brief for Petitioner 5a (June 9 Order). In support of this action, the President invoked his authority as "Commander in Chief of the U. S. armed forces" and the Authorization for Use of Military Force Joint Resolution, Pub. L. 107–40, 115 Stat. 224 (AUMF),[1] enacted by Congress on September 18, 2001. June 9 Order 5a. The President also made several factual findings explaining his decision to designate Padilla an enemy combatant.[2] Based on these findings, the President concluded that it is "consistent with U. S. law and the laws of war for the Secretary of Defense to detain Mr. Padilla as an enemy combatant." Id., at 6a.

---

[1] The AUMF provides in relevant part: "[T]he President is authorized to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons." 115 Stat. 224.

[2] In short, the President "[d]etermine[d]" that Padilla (1) "is closely associated with al Qaeda, an international terrorist organization with which the United States is at war;" (2) that he "engaged in . . . hostile and war-like acts, including . . . preparation for acts of international terrorism" against the United States; (3) that he "possesses intelligence" about al Qaeda that "would aid U. S. efforts to prevent attacks by al Qaeda on the United States"; and finally, (4) that he "represents a continuing, present and grave danger to the national security of the United States," such that his military detention "is necessary to prevent him from aiding al Qaeda in its efforts to attack the United States." June 9 Order 5a–6a.

That same day, Padilla was taken into custody by Department of Defense officials and transported to the Consolidated Naval Brig in Charleston, South Carolina.[3] He has been held there ever since.

On June 11, Padilla's counsel, claiming to act as his next friend, filed in the Southern District a habeas corpus petition under 28 U. S. C. § 2241. The petition, as amended, alleged that Padilla's military detention violates the Fourth, Fifth, and Sixth Amendments and the Suspension Clause, Art. I, § 9, cl. 2, of the United States Constitution. The amended petition named as respondents President Bush, Secretary Rumsfeld, and Melanie A. Marr, Commander of the Consolidated Naval Brig.

The Government moved to dismiss, arguing that Commander Marr, as Padilla's immediate custodian, is the only proper respondent to his habeas petition, and that the District Court lacks jurisdiction over Commander Marr because she is located outside the Southern District. On the merits, the Government contended that the President has authority to detain Padilla militarily pursuant to the Commander in Chief Clause of the Constitution, Art. II, § 2, cl. 1, the congressional AUMF, and this Court's decision in *Ex parte Quirin*, 317 U. S. 1 (1942).

The District Court issued its decision in December 2002. *Padilla ex rel. Newman* v. *Bush*, 233 F. Supp. 2d 564. The court held that the Secretary's "personal involvement" in Padilla's military custody renders him a proper respondent to Padilla's habeas petition, and that it can assert jurisdiction over the Secretary under New York's long-arm statute, not-

---

[3] Also on June 9, the Government notified the District Court *ex parte* of the President's order; informed the court that it was transferring Padilla into military custody in South Carolina and that it was consequently withdrawing its grand jury subpoena of Padilla; and asked the court to vacate the material witness warrant. *Padilla ex rel. Newman* v. *Bush*, 233 F. Supp. 2d 564, 571 (SDNY 2002). The court vacated the warrant. *Ibid.*

withstanding his absence from the Southern District.[4]  *Id.*, at 581–587.  On the merits, however, the court accepted the Government's contention that the President has authority to detain as enemy combatants citizens captured on American soil during a time of war.  *Id.*, at 587–599.[5]

The Court of Appeals for the Second Circuit reversed. 352 F. 3d 695 (2003).  The court agreed with the District Court that Secretary Rumsfeld is a proper respondent, reasoning that in cases where the habeas petitioner is detained for "other than federal criminal violations, the Supreme Court has recognized exceptions to the general practice of naming the immediate physical custodian as respondent." *Id.*, at 704–708.  The Court of Appeals concluded that on these "unique" facts Secretary Rumsfeld is Padilla's custodian because he exercises "the legal reality of control" over Padilla and because he was personally involved in Padilla's military detention.  *Id.*, at 707–708.  The Court of Appeals also affirmed the District Court's holding that it has jurisdiction over the Secretary under New York's long-arm statute. *Id.*, at 708–710.

Reaching the merits, the Court of Appeals held that the President lacks authority to detain Padilla militarily.  *Id.*, at 710–724.  The court concluded that neither the President's

---

[4] The court dismissed Commander Marr, Padilla's immediate custodian, reasoning that she would be obliged to obey any order the court directed to the Secretary.  *Id.*, at 583.  The court also dismissed President Bush as a respondent, a ruling Padilla does not challenge.  *Id.*, at 582–583.

[5] Although the District Court upheld the President's authority to detain domestically captured enemy combatants, it rejected the Government's contentions that Padilla has no right to challenge the factual basis for his detention and that he should be denied access to counsel.  Instead, the court held that the habeas statute affords Padilla the right to controvert alleged facts, and granted him monitored access to counsel to effectuate that right.  *Id.*, at 599–605.  Finally, the court announced that after it received Padilla's factual proffer, it would apply a deferential "some evidence" standard to determine whether the record supports the President's designation of Padilla as an enemy combatant.  *Id.*, at 605–608.

Commander in Chief power nor the AUMF authorizes military detentions of American citizens captured on American soil. *Id.*, at 712–718, 722–723. To the contrary, the Court of Appeals found in both our case law and in the Non-Detention Act, 18 U. S. C. § 4001(a),[6] a strong presumption against domestic military detention of citizens absent explicit congressional authorization. 352 F. 3d, at 710–722. Accordingly, the court granted the writ of habeas corpus and directed the Secretary to release Padilla from military custody within 30 days. *Id.*, at 724.

We granted the Government's petition for certiorari to review the Court of Appeals' rulings with respect to the jurisdictional and the merits issues, both of which raise important questions of federal law. 540 U. S. 1173 (2004).[7]

The question whether the Southern District has jurisdiction over Padilla's habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does the Southern District have jurisdiction over him or her? We address these questions in turn.

I

The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U. S. C. § 2242; see also § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.

---

[6] Section 4001(a) provides that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress."

[7] The word "jurisdiction," of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U. S. C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court.

This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court. *Ibid.* We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the, body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales* v. *Whitney,* 114 U. S. 564, 574 (1885) (emphasis added); see also *Braden* v. *30th Judicial Circuit Court of Ky.,* 410 U. S. 484, 494–495 (1973) ("The writ of habeas corpus" acts upon "the person who holds [the detainee] in what is alleged to be unlawful custody," citing *Wales, supra,* at 574); *Braden, supra,* at 495 (" '[T]his writ . . . is directed to . . . [the] jailer,' " quoting *In re Jackson,* 15 Mich. 417, 439–440 (1867)).

In accord with the statutory language and *Wales'* immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement—"core challenges"—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official. See, *e. g., Hogan* v. *Hanks,* 97 F. 3d 189, 190 (CA7 1996); *Brittingham* v. *United States,* 982 F. 2d 378, 379 (CA9 1992); *Blango* v. *Thornburgh,* 942 F. 2d 1487, 1491–1492 (CA10 1991) *(per curiam); Brennan* v. *Cunningham,* 813 F. 2d 1, 12 (CA1 1987); *Guerra* v. *Meese,* 786 F. 2d 414, 416 (CADC 1986) *(per curiam); Billiteri* v. *United States Bd. of Parole,* 541 F. 2d 938, 948 (CA2 1976); *Sanders* v. *Bennett,* 148 F. 2d 19, 20 (CADC 1945); *Jones* v. *Biddle,* 131 F. 2d 853, 854 (CA8 1942).[8]  No exceptions to this rule, either recog-

---

[8] In *Ahrens* v. *Clark,* 335 U. S. 188 (1948), we left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation. *Id.,* at 189, 193. The lower courts have divided on this question, with the majority applying the immediate custodian rule and holding that the Attorney General is not a proper respondent.  Compare *Robledo-Gonzales* v. *Ashcroft,* 342 F. 3d 667

nized[9] or proposed, see *post*, at 454 (KENNEDY, J., concurring), apply here.

If the *Wales* immediate custodian rule applies in this case, Commander Marr—the equivalent of the warden at the military brig—is the proper respondent, not Secretary Rumsfeld. See *Al-Marri* v. *Rumsfeld*, 360 F. 3d 707, 708–709 (CA7 2004) (holding in the case of an alleged enemy combatant detained at the Consolidated Naval Brig, the proper respondent is Commander Marr, not Secretary Rumsfeld); *Monk* v. *Secretary of the Navy*, 793 F. 2d 364, 369 (CADC 1986) (holding that the proper respondent in a habeas action brought by a military prisoner is the commandant of the military detention facility, not the Secretary of the Navy); cf. 10 U. S. C. § 951(c) (providing that the commanding officer of a military correctional facility "shall have custody and control" of the prisoners confined therein). Neither Padilla, nor the courts below, nor JUSTICE STEVENS' dissent deny the general applicability of the immediate custodian rule to habeas petitions challenging physical custody. *Post*, at 458. They argue instead that the rule is flexible and should not apply on the "unique facts" of this case. Brief for Respondents 44. We disagree.

---

(CA7 2003) (Attorney General is not proper respondent); *Roman* v. *Ashcroft*, 340 F. 3d 314 (CA6 2003) (same); *Vasquez* v. *Reno*, 233 F. 3d 688 (CA1 2000) (same); *Yi* v. *Maugans*, 24 F. 3d 500 (CA3 1994) (same), with *Armentero* v. *INS*, 340 F. 3d 1058 (CA9 2003) (Attorney General is proper respondent). The Second Circuit discussed the question at some length, but ultimately reserved judgment in *Henderson* v. *INS*, 157 F. 3d 106 (1998). Because the issue is not before us today, we again decline to resolve it.

[9] We have long implicitly recognized an exception to the immediate custodian rule in the military context where an American citizen is detained outside the territorial jurisdiction of any district court. *Braden* v. *30th Judicial Circuit Court of Ky.*, 410 U. S. 484, 498 (1973) (discussing the exception); *United States ex rel. Toth* v. *Quarles*, 350 U. S. 11 (1955) (court-martial convict detained in Korea named Secretary of the Air Force as respondent); *Burns* v. *Wilson*, 346 U. S. 137 (1953) (courts-martial convicts detained in Guam named Secretary of Defense as respondent).

First, Padilla notes that the substantive holding of *Wales*—that a person released on his own recognizance is not "in custody" for habeas purposes—was disapproved in *Hensley* v. *Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara Cty.*, 411 U. S. 345, 350, n. 8 (1973), as part of this Court's expanding definition of "custody" under the habeas statute.[10]   Padilla seems to contend, and the dissent agrees, *post*, at 461–462, that because we no longer require physical detention as a prerequisite to habeas relief, the immediate custodian rule, too, must no longer bind us, even in challenges to physical custody.   That argument, as the Seventh Circuit aptly concluded, is a "non sequitur." *Al-Marri, supra*, at 711.   That our understanding of custody has broadened to include restraints short of physical confinement does nothing to undermine the rationale or statutory foundation of *Wales'* immediate custodian rule where physical custody *is* at issue.   Indeed, as the cases cited above attest, it has consistently been applied in this core habeas context within the United States.[11]

The Court of Appeals' view that we have relaxed the immediate custodian rule in cases involving prisoners detained for "other than federal criminal violations," and that in such cases the proper respondent is the person exercising the "legal reality of control" over the petitioner, suffers from the same logical flaw.   352 F. 3d, at 705, 707.   Certainly the statute itself makes no such distinction based on the source of the physical detention.   Nor does our case law support a deviation from the immediate custodian rule here.   Rather,

---

[10] For other landmark cases addressing the meaning of "in custody" under the habeas statute, see *Garlotte* v. *Fordice*, 515 U. S. 39 (1995); *Carafas* v. *LaVallee*, 391 U. S. 234 (1968); *Peyton* v. *Rowe*, 391 U. S. 54 (1968); *Jones* v. *Cunningham*, 371 U. S. 236 (1963).

[11] Furthermore, Congress has not substantively amended in more than 130 years the relevant portions of the habeas statute on which *Wales* based its immediate custodian rule, despite uniform case law embracing the *Wales* rule in challenges to physical custody.

the cases cited by Padilla stand for the simple proposition that the immediate physical custodian rule, by its terms, does not apply when a habeas petitioner challenges something other than his present physical confinement.

In *Braden*, for example, an Alabama prisoner filed a habeas petition in the Western District of Kentucky. He did not contest the validity of the Alabama conviction for which he was confined, but instead challenged a detainer lodged · against him in Kentucky state court. Noting that petitioner sought to challenge a "confinement that would be imposed in the future," we held that petitioner was "in custody" in Kentucky by virtue of the detainer. 410 U. S., at 488–489. In these circumstances, the Court held that the proper respondent was not the prisoner's immediate physical custodian (the Alabama warden), but was instead the Kentucky court in which the detainer was lodged. This made sense because the Alabama warden was not "the person who [held] him in what [was] alleged to be unlawful custody." *Id.*, at 494–495 (citing *Wales*, 114 U. S., at 574); *Hensley, supra*, at 351, n. 9 (observing that the petitioner in *Braden* "was in the custody of Kentucky officials for purposes of his habeas corpus action"). Under *Braden*, then, a habeas petitioner who challenges a form of "custody" other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged "custody." But nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement. See *Al-Marri, supra*, at 711–712; *Monk, supra*, at 369. To the contrary, *Braden* cited *Wales* favorably and reiterated the traditional rule that a prisoner seeking release from confinement must sue his "jailer." 410 U. S., at 495 (internal quotation marks omitted).

For the same reason, *Strait* v. *Laird*, 406 U. S. 341 (1972), does not aid Padilla. *Strait* involved an inactive reservist domiciled in California who filed a § 2241 petition seeking

relief from his military obligations. We noted that the reservist's "nominal" custodian was a commanding officer in Indiana who had charge of petitioner's Army records. *Id.,* at 344. As in *Braden,* the immediate custodian rule had no application because petitioner was not challenging any present physical confinement.

In *Braden* and *Strait,* the immediate custodian rule did not apply because *there was no* immediate physical custodian with respect to the "custody" being challenged. That is not the case here: Commander Marr exercises day-to-day control over Padilla's physical custody. We have never intimated that a habeas petitioner could name someone other than his immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction. Nor can we do so here just because Padilla's physical confinement stems from a military order by the President.

It follows that neither *Braden* nor *Strait* supports the Court of Appeals' conclusion that Secretary Rumsfeld is the proper respondent because he exercises the "legal reality of control" over Padilla.[12] As we have explained, identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged "custody." In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent. If the "legal control" test applied to physical-custody challenges, a convicted prisoner would be able to name the State or the Attorney General as a respondent to a § 2241 petition. As the statutory language,

---

[12] The Court of Appeals reasoned that "only [the Secretary]—not Commander Marr—could inform the President that further restraint of Padilla as an enemy combatant is no longer necessary." 352 F. 3d 695, 707 (CA2 2003). JUSTICE STEVENS' dissent echoes this argument. *Post,* at 461–462.

established practice, and our precedent demonstrate, that is not the case.[13]

At first blush *Ex parte Endo*, 323 U. S. 283 (1944), might seem to lend support to Padilla's "legal control" argument. There, a Japanese-American citizen interned in California by the War Relocation Authority (WRA) sought relief by filing a § 2241 petition in the Northern District of California, naming as a respondent her immediate custodian. After she filed the petition, however, the Government moved her to Utah. Thus, the prisoner's immediate physical custodian was no longer within the jurisdiction of the District Court. We held, nonetheless, that the Northern District "acquired jurisdiction in this case and that [Endo's] removal . . . did not cause it to lose jurisdiction where a person in whose custody she is remains within the district." *Id.*, at 306. We held that, under these circumstances, the assistant director of the WRA, who resided in the Northern District, would be an "appropriate respondent" to whom the District Court could direct the writ. *Id.*, at 304–305.

While *Endo* did involve a petitioner challenging her present physical confinement, it did not, as Padilla and JUSTICE STEVENS contend, hold that such a petitioner may properly name as respondent someone other than the immediate physical custodian. *Post*, at 461–462 (citing *Endo* as supporting a "more functional approach" that allows habeas petitioners

---

[13] Even less persuasive is the Court of Appeals' and the dissent's belief that Secretary Rumsfeld's "unique" and "pervasive" personal involvement in authorizing Padilla's detention justifies naming him as the respondent. 352 F. 3d, at 707–708 (noting that the Secretary "was charged by the President in the June 9 Order with detaining Padilla" and that the Secretary "determined that Padilla would be sent to the brig in South Carolina"); *post*, at 462. If personal involvement were the standard, "then the prosecutor, the trial judge, or the governor would be named as respondents" in criminal habeas cases. *Al-Marri* v. *Rumsfeld*, 360 F. 3d 707, 711 (CA7 2004). As the Seventh Circuit correctly held, the proper respondent is the person responsible for maintaining—not authorizing—the custody of the prisoner. *Ibid.*

to name as respondent an individual with "control" over the petitioner). Rather, the Court's holding that the writ could be directed to a supervisory official came not in our holding that the District Court initially acquired jurisdiction—it did so because Endo properly named her immediate custodian and filed in the district of confinement—but in our holding that the District Court could effectively grant habeas relief despite the Government-procured absence of petitioner from the Northern District.[14]  Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

*Endo*'s holding does not help respondents here. Padilla was moved from New York to South Carolina before his lawyer filed a habeas petition on his behalf. Unlike the District Court in *Endo*, therefore, the Southern District never acquired jurisdiction over Padilla's petition.

Padilla's argument reduces to a request for a new exception to the immediate custodian rule based upon the "unique facts" of this case. While Padilla's detention is undeniably unique in many respects, it is at bottom a simple challenge to physical custody imposed by the Executive—the traditional core of the Great Writ. There is no indication that there was any attempt to manipulate behind Padilla's transfer—he was taken to the same facility where other al Qaeda members were already being held, and the Government did not attempt to hide from Padilla's lawyer where it had taken him. *Infra*, at 449–450, and n. 17; *post*, at 454 (KENNEDY,

---

[14] As we explained: "Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the [petitioner] is within reach of the court's process." 323 U. S., at 307.

J., concurring). His detention is thus not unique in any way that would provide arguable basis for a departure from the immediate custodian rule. Accordingly, we hold that Commander Marr, not Secretary Rumsfeld, is Padilla's custodian and the proper respondent to his habeas petition.

## II

We turn now to the second subquestion. District courts are limited to granting habeas relief "within their respective jurisdictions." 28 U. S. C. § 2241(a). We have interpreted this language to require "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Braden*, 410 U. S., at 495. Thus, jurisdiction over Padilla's habeas petition lies in the Southern District only if it has jurisdiction over Commander Marr. We conclude it does not.

Congress added the limiting clause—"within their respective jurisdictions"—to the habeas statute in 1867 to avert the "inconvenient [and] potentially embarrassing" possibility that "every judge anywhere [could] issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat." *Carbo* v. *United States*, 364 U. S. 611, 617 (1961). Accordingly, with respect to habeas petitions "designed to relieve an individual from oppressive confinement," the traditional rule has always been that the Great Writ is "issuable only in the district of confinement." *Id.*, at 618.

Other portions of the habeas statute support this common-sense reading of § 2241(a). For example, if a petitioner seeks habeas relief in the court of appeals, or from this Court or a Justice thereof, the petition must "state the reasons for not making application to *the* district court of the district *in which the applicant is held.*" 28 U. S. C. § 2242 (emphases added). Moreover, the court of appeals, this Court, or a Justice thereof "may decline to entertain an application for a writ of habeas corpus and may transfer the application . . . to *the* district court having jurisdiction to entertain it."

§ 2241(b) (emphasis added). The Federal Rules similarly provide that an "application for a writ of habeas corpus must be made to *the* appropriate district court." Fed. Rule App. Proc. 22(a) (emphasis added).

Congress has also legislated against the background of the "district of confinement" rule by fashioning explicit exceptions to the rule in certain circumstances. For instance, § 2241(d) provides that when a petitioner is serving a state criminal sentence in a State that contains more than one federal district, he may file a habeas petition not only "in the district court for the district wherein [he] is in custody," but also "in the district court for the district within which the State court was held which convicted and sentenced him"; and "each of such district courts shall have concurrent jurisdiction to entertain the application." Similarly, until Congress directed federal criminal prisoners to file certain postconviction petitions in the sentencing courts by adding § 2255 to the habeas statute, federal prisoners could litigate such collateral attacks only in the district of confinement. See *United States* v. *Hayman*, 342 U. S. 205, 212–219 (1952). Both of these provisions would have been unnecessary if, as the Court of Appeals believed, § 2241's general habeas provisions permit a prisoner to file outside the district of confinement.

The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement. Despite this ample statutory and historical pedigree, Padilla contends, and the Court of Appeals held, that the district of confinement rule no longer applies to core habeas challenges. Rather, Padilla, as well as today's dissenters, *post*, at 462–464, urge that our decisions in *Braden* and *Strait* stand for the proposition that jurisdiction will lie in any district in which the respondent is amenable to service of process. We disagree.

Prior to *Braden*, we had held that habeas jurisdiction depended on the presence of both the petitioner and his custodian within the territorial confines of the district court. See *Ahrens* v. *Clark*, 335 U. S. 188, 190–192 (1948). By allowing an Alabama prisoner to challenge a Kentucky detainer in the Western District of Kentucky, *Braden* changed course and held that habeas jurisdiction requires only "that the court issuing the writ have jurisdiction over the custodian." 410 U. S., at 495.

But we fail to see how *Braden*'s requirement of jurisdiction over the respondent alters the district of confinement rule for challenges to present physical custody. *Braden* itself did not involve such a challenge; rather, Braden challenged his future confinement in Kentucky by suing his Kentucky custodian. We reasoned that "[u]nder these circumstances it would serve no useful purpose to apply the *Ahrens* rule and require that the action be brought in Alabama." *Id.*, at 499. In habeas challenges to *present* physical confinement, by contrast, the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent. This is because, as we have held, the immediate custodian rule applies to core habeas challenges to present physical custody. By definition, the immediate custodian and the prisoner reside in the same district.

Rather than focusing on the holding and historical context of *Braden*, JUSTICE STEVENS, *post*, at 462, like the Court of Appeals, seizes on dicta in which we referred to "service of process" to contend that the Southern District could assert jurisdiction over Secretary Rumsfeld under New York's long-arm statute. See *Braden*, 410 U. S., at 495 ("So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' . . . even if the prisoner himself is confined outside the court's territorial jurisdiction"). But that dicta did not indicate that a custodian may be served with process *outside* of the district court's territorial jurisdiction. To the contrary, the facts and hold-

ing of *Braden* dictate the opposite inference. Braden served his Kentucky custodian in Kentucky. Accordingly, we concluded that the Western District of Kentucky had jurisdiction over the petition "since the respondent was properly served *in that district.*" *Id.*, at 500 (emphasis added); see also *Endo*, 323 U. S., at 304–305 (noting that the court could issue the writ to a WRA official "whose office is at San Francisco, which is in the jurisdiction of the [Northern District of California]"). Thus, *Braden* in no way authorizes district courts to employ long-arm statutes to gain jurisdiction over custodians who are outside of their territorial jurisdiction. See *Al-Marri*, 360 F. 3d, at 711; *Guerra*, 786 F. 2d, at 417. Indeed, in stating its holding, *Braden* favorably cites *Schlanger* v. *Seamans*, 401 U. S. 487 (1971), a case squarely holding that the custodian's absence from the territorial jurisdiction of the district court is fatal to habeas jurisdiction. 410 U. S., at 500. Thus, Braden does not derogate from the traditional district of confinement rule for core habeas petitions challenging present physical custody.

The Court of Appeals also thought *Strait* supported its long-arm approach to habeas jurisdiction. But *Strait* offers even less help than *Braden*. In *Strait*, we held that the Northern District of California had jurisdiction over Strait's "nominal" custodian—the commanding officer of the Army records center—even though he was physically located in Indiana. We reasoned that the custodian was "present" in California "through the officers in the hierarchy of the command who processed [Strait's] application for discharge." 406 U. S., at 345. The *Strait* Court contrasted its broad view of "presence" in the case of a nominal custodian with a " 'commanding officer who is responsible for the day to day control of his subordinates,' " who would be subject to habeas jurisdiction only in the district where he physically resides. *Ibid.* (quoting *Arlen* v. *Laird*, 451 F. 2d 684, 687 (CA2 1971)).

The Court of Appeals, much like JUSTICE STEVENS' dissent, reasoned that Secretary Rumsfeld, in the same way as

Strait's commanding officer, was "present" in the Southern District through his subordinates who took Padilla into military custody. 352 F. 3d, at 709–710; *post*, at 462. We think not.

*Strait* simply has no application to the present case. *Strait* predated *Braden*, so the then-applicable *Ahrens* rule required that both the petitioner and his custodian be present in California. Thus, the only question was whether Strait's commanding officer was present in California notwithstanding his physical absence from the district. Distinguishing *Schlanger, supra*, we held that it would "exalt fiction over reality" to require Strait to sue his "nominal custodian" in Indiana when Strait had always resided in California and had his only meaningful contacts with the Army there. 406 U. S., at 344–346. Only under these limited circumstances did we invoke concepts of personal jurisdiction to hold that the custodian was "present" in California through the actions of his agents. *Id.*, at 345.

Here, by contrast, Padilla seeks to challenge his present physical custody in South Carolina. Because the immediate custodian rule applies to such habeas challenges, the proper respondent is Commander Marr, who is also present in South Carolina. There is thus no occasion to designate a "nominal" custodian and determine whether he or she is "present" in the same district as petitioner.[15] Under *Braden* and the district of confinement rule, as we have explained, Padilla must file his habeas action in South Carolina. Were we to extend *Strait*'s limited exception to the territorial nature of habeas jurisdiction to the context of physical-custody challenges, we would undermine, if not negate, the purpose of Congress in amending the habeas statute in 1867.

The proviso that district courts may issue the writ only "within their respective jurisdictions" forms an important

---

[15] In other words, Commander Marr is the equivalent of the "commanding officer [with] day to day control" that we distinguished in *Strait*. 406 U. S., at 345 (internal quotation marks omitted).

corollary to the immediate custodian rule in challenges to present physical custody under § 2241. Together they compose a simple rule that has been consistently applied in the lower courts, including in the context of military detentions: Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement. See *Al-Marri, supra,* at 710, 712 (alleged enemy combatant detained at Consolidated Naval Brig must file petition in the District of South Carolina; collecting cases dismissing § 2241 petitions filed outside the district of confinement); *Monk,* 793 F. 2d, at 369 (court-martial convict must file in district of confinement).[16]

This rule, derived from the terms of the habeas statute, serves the important purpose of preventing forum shopping by habeas petitioners. Without it, a prisoner could name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction. The result would be rampant forum shopping, district courts with overlapping jurisdiction, and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation 137 years ago.

## III

JUSTICE STEVENS' dissent, not unlike the Court of Appeals' decision, rests on the mistaken belief that we have

---

[16] As a corollary to the previously referenced exception to the immediate custodian rule, n. 8, *supra,* we have similarly relaxed the district of confinement rule when "American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus." *Braden,* 410 U. S., at 498 (citing cases). In such cases, we have allowed the petitioner to name as respondent a supervisory official and file the petition in the district where the respondent resides. *Burns* v. *Wilson,* 346 U. S. 137 (1953) (courts-martial convicts held in Guam sued Secretary of Defense in the District of Columbia); *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11 (1955) (court-martial convict held in Korea sued Secretary of the Air Force in the District of Columbia).

made various exceptions to the immediate custodian and district of confinement rules whenever "exceptional," "'special,'" or "unusual" cases have arisen. *Post*, at 455, 458, 462, n. 5. We have addressed most of his contentions in the foregoing discussion, but we briefly touch on a few additional points.

Apparently drawing a loose analogy to *Endo*, JUSTICE STEVENS asks us to pretend that Padilla and his immediate custodian were present in the Southern District at the time counsel filed the instant habeas petition, thus rendering jurisdiction proper. *Post*, at 458–459. The dissent asserts that the Government "depart[ed] from the time-honored practice of giving one's adversary fair notice of an intent to present an important motion to the court," when on June 9 it moved *ex parte* to vacate the material witness warrant and allegedly failed to immediately inform counsel of its intent to transfer Padilla to military custody in South Carolina. *Post*, at 459; cf. n. 3, *supra*. Constructing a hypothetical "scenario," the dissent contends that if counsel had been immediately informed, she "would have filed the habeas application then and there," while Padilla remained in the Southern District, "rather than waiting two days." *Post*, at 458. Therefore, JUSTICE STEVENS concludes, the Government's alleged misconduct "justifies treating the habeas application as the functional equivalent of one filed two days earlier." *Post*, at 459 ("[W]e should not permit the Government to obtain a tactical advantage as a consequence of an *ex parte* proceeding").

The dissent cites no authority whatsoever for its extraordinary proposition that a district court can exercise statutory jurisdiction based on a series of events that did not occur, or that jurisdiction might be premised on "punishing" alleged Government misconduct. The lower courts—unlike the dissent—did not perceive any hint of Government misconduct or bad faith that would warrant extending *Endo* to a case where both the petitioner and his immediate custodian were

outside of the district at the time of filing. Not surprisingly, then, neither Padilla nor the lower courts relied on the dissent's counterfactual theory to argue that habeas jurisdiction was proper. Finding it contrary to our well-established precedent, we are not persuaded either.[17]

The dissent contends that even if we do not indulge its hypothetical scenario, the Court has made "numerous exceptions" to the immediate custodian and district of confinement rules, rendering our bright-line rule "far from bright." *Post*, at 460. Yet the dissent cannot cite *a single case* in which we have deviated from the longstanding rule we reaffirm today—that is, a case in which we allowed a habeas petitioner challenging his present physical custody within the United States to name as respondent someone other than

_____

[17] On a related note, the dissent argues that the facts as they actually existed at the time of filing should not matter, because "what matters for present purposes are the facts available to [counsel] at the time of filing." *Post*, at 459, n. 3. According to the dissent, because the Government "shrouded . . . in secrecy" the location of Padilla's military custody, counsel was entitled to file in the district where Padilla's presence was "last officially confirmed." *Ibid.* As with the argument addressed above, neither Padilla nor the District Court—which was much closer to the facts of the case than we are—or the Court of Appeals ever suggested that the Government concealed Padilla's whereabouts from counsel, much less contended that such concealment was the basis for habeas jurisdiction in the Southern District. And even if this were a valid legal argument, the record simply does not support the dissent's inference of Government secrecy. The dissent relies solely on a letter written by Padilla's counsel. In that same letter, however, counsel states that she "was informed [on June 10]" that her client had been taken into custody by the Department of Defense and "detain[ed] at a naval military prison." App. 66. When counsel filed Padilla's habeas petition on June 11, she averred that "Padilla is being held in segregation at the high-security Consolidated Naval Brig in Charleston, South Carolina." Pet. for Writ of Habeas Corpus in No. 02 Civ. 4445 (SDNY), p. 2, Record, Doc. 1. The only reasonable inference, particularly in light of Padilla's failure to argue to the contrary, is that counsel was well aware of Padilla's presence in South Carolina when she filed the habeas petition, not that the Government "shrouded" Padilla's whereabouts in secrecy.

the immediate custodian and to file somewhere other than the district of confinement.[18] If JUSTICE STEVENS' view were accepted, district courts would be consigned to making ad hoc determinations as to whether the circumstances of a given case are "exceptional," "special," or "unusual" enough to require departure from the jurisdictional rules this Court has consistently applied. We do not think Congress intended such a result.

Finally, the dissent urges us to bend the jurisdictional rules because the merits of this case are indisputably of "profound importance," *post*, at 455, 460–461. But it is surely

---

[18] Instead, JUSTICE STEVENS, like the Court of Appeals, relies heavily on *Braden, Strait,* and other cases involving challenges to something other than present physical custody. *Post,* at 461–464, and n. 4; *post,* at 461, n. 4 (citing *Garlotte* v. *Fordice,* 515 U. S. 39 (1995) (habeas petitioner challenging expired sentence named Governor as respondent; immediate custodian issue not addressed); *Middendorf* v. *Henry,* 425 U. S. 25 (1976) (putative habeas class action challenging court-martial procedures throughout the military; immediate custodian issue not addressed)); *post,* at 463 (citing *Eisel* v. *Secretary of the Army,* 477 F. 2d 1251 (CADC 1973) (allowing an inactive reservist challenging his military status to name the Secretary of the Army as respondent)). *Demjanjuk* v. *Meese,* 784 F. 2d 1114 (CADC 1986), on which the dissent relies, *post,* at 458, is similarly unhelpful: When, as in that case, a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules. That is not the case here, where the identity of the immediate custodian and the location of the appropriate district court are clear.

The dissent also cites two cases in which a state prisoner proceeding under 28 U. S. C. § 2254 named as respondent the State's officer in charge of penal institutions. *Post,* at 461, n. 4 (citing *California Dept. of Corrections* v. *Morales,* 514 U. S. 499 (1995); *Wainwright* v. *Greenfield,* 474 U. S. 284 (1986)). But such cases do not support Padilla's cause. First of all, the respondents did not challenge their designation as inconsistent with the immediate custodian rule. More to the point, Congress has authorized § 2254 petitioners challenging present physical custody to name either the warden *or* the chief state penal officer as a respondent. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Advisory Committee's Note on Rule 2(a), 28 U. S. C., pp. 469–470 (adopted in 1976). Congress has made no such provision for § 2241 petitioners like Padilla.

just as necessary in important cases as in unimportant ones that courts take care not to exceed their "respective jurisdictions" established by Congress.

The District of South Carolina, not the Southern District of New York, was the district court in which Padilla should have brought his habeas petition. We therefore reverse the judgment of the Court of Appeals and remand the case for entry of an order of dismissal without prejudice.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE O'CONNOR joins, concurring.

Though I join the opinion of the Court, this separate opinion is added to state my understanding of how the statute should be interpreted in light of the Court's holding. The Court's analysis relies on two rules. First, the habeas action must be brought against the immediate custodian. Second, when an action is brought in the district court, it must be filed in the district court whose territorial jurisdiction includes the place where the custodian is located.

These rules, however, are not jurisdictional in the sense of a limitation on subject-matter jurisdiction. *Ante*, at 434, n. 7. That much is clear from the many cases in which petitions have been heard on the merits despite their noncompliance with either one or both of the rules. See, *e. g., Braden v. 30th Judicial Circuit Court of Ky.*, 410 U. S. 484, 495 (1973); *Strait v. Laird*, 406 U. S. 341, 345 (1972); *United States ex rel. Toth v. Quarles*, 350 U. S. 11 (1955); *Burns v. Wilson*, 346 U. S. 137 (1953); *Ex parte Endo*, 323 U. S. 283 (1944).

In my view, the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue. This view is more in keeping with the opinion in *Braden*, and its discussion explaining the rules for the proper forum for habeas petitions. 410 U. S., at 493, 500 (indicating that the analysis is guided by "traditional

venue considerations" and "traditional principles of venue"); see also *Moore* v. *Olson*, 368 F. 3d 757, 759–760 (CA7 2004) (suggesting that the territorial-jurisdiction rule is a venue rule, and the immediate-custodian rule is a personal-jurisdiction rule). This approach is consistent with the reference in the statute to the "respective jurisdictions" of the district court. 28 U. S. C. § 2241. As we have noted twice this Term, the word "jurisdiction" is susceptible of different meanings, not all of which refer to the power of a federal court to hear a certain class of cases. *Kontrick* v. *Ryan*, 540 U. S. 443 (2004); *Scarborough* v. *Principi*, 541 U. S. 401 (2004). The phrase "respective jurisdictions" does establish a territorial restriction on the proper forum for habeas petitions, but does not of necessity establish that the limitation goes to the power of the court to hear the case.

Because the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government. *Moore, supra,* at 759; cf. *Endo, supra,* at 305 ("The fact that no respondent was ever served with process or appeared in the proceedings is not important. The United States resists the issuance of a writ. A cause exists in that state of the proceedings and an appeal lies from denial of a writ without the appearance of a respondent"). For the same reason, the immediate-custodian and territorial rules are subject to exceptions, as acknowledged in the Court's opinion. *Ante*, at 436, n. 9, 438–442, 444–446. This does not mean that habeas petitions are governed by venue rules and venue considerations that apply to other sorts of civil lawsuits. Although habeas actions are civil cases, they are not automatically subject to all of the Federal Rules of Civil Procedure. See Fed. Rule Civ. Proc. 81(a)(2) ("These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing Section 2254 Cases, or the

Rules Governing Section 2255 Proceedings"). Instead, these forum-location rules for habeas petitions are based on the habeas statutes and the cases interpreting them. Furthermore, the fact that these habeas rules are subject to exceptions does not mean that, in the exceptional case, a petition may be properly filed in any one of the federal district courts. When an exception applies, see, *e. g., Rasul* v. *Bush, post,* p. 466, courts must still take into account the considerations that in the ordinary case are served by the immediate-custodian rule, and, in a similar fashion, limit the available forum to the one with the most immediate connection to the named custodian.

I would not decide today whether these habeas rules function more like rules of personal jurisdiction or rules of venue. It is difficult to describe the precise nature of these restrictions on the filing of habeas petitions, as an examination of the Court's own opinions in this area makes clear. Compare, *e. g., Ahrens* v. *Clark,* 335 U. S. 188 (1948), with *Schlanger* v. *Seamans,* 401 U. S. 487, 491 (1971), and *Braden, supra,* at 495. The precise question of how best to characterize the statutory direction respecting where the action must be filed need not be resolved with finality in this case. Here there has been no waiver by the Government; there is no established exception to the immediate-custodian rule or to the rule that the action must be brought in the district court with authority over the territory in question; and there is no need to consider some further exception to protect the integrity of the writ or the rights of the person detained.

For the purposes of this case, it is enough to note that, even under the most permissive interpretation of the habeas statute as a venue provision, the Southern District of New York was not the proper place for this petition. As the Court concludes, in the ordinary case of a single physical custody within the borders of the United States, where the objection has not been waived by the Government, the immediate-custodian and territorial-jurisdiction rules must

apply. *Ante*, at 451. I also agree with the arguments from statutory text and case law that the Court marshals in support of these two rules. *Ante*, at 434–435, 442–443. Only in an exceptional case may a court deviate from those basic rules to hear a habeas petition filed against some person other than the immediate custodian of the prisoner, or in some court other than the one in whose territory the custodian may be found.

The Court has made exceptions in the cases of nonphysical custody, see, *e. g.*, *Strait*, 406 U. S., at 345, of dual custody, see, *e. g.*, *Braden*, 410 U. S., at 500, and of removal of the prisoner from the territory of a district after a petition has been filed, see, *e. g.*, *Endo*, 323 U. S., at 306; see also *ante*, at 440–441, 444. In addition, I would acknowledge an exception if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention. In cases of that sort, habeas jurisdiction would be in the district court from whose territory the petitioner had been removed. In this case, if the Government had removed Padilla from the Southern District of New York but refused to tell his lawyer where he had been taken, the District Court would have had jurisdiction over the petition. Or, if the Government did inform the lawyer where a prisoner was being taken but kept moving him so a filing could not catch up to the prisoner, again, in my view, habeas jurisdiction would lie in the district or districts from which he had been removed.

None of the exceptions apply here. There is no indication that the Government refused to tell Padilla's lawyer where he had been taken. The original petition demonstrates that the lawyer knew where Padilla was being held at that time. *Ante*, at 449, n. 17. In these circumstances, the basic rules apply, and the District of South Carolina was the proper

forum. The present case demonstrates the wisdom of those rules.

Both Padilla's change in location and his change of custodian reflected a change in the Government's rationale for detaining him. He ceased to be held under the authority of the criminal justice system, see 18 U. S. C. § 3144, and began to be held under that of the military detention system. Rather than being designed to play games with forums, the Government's removal of Padilla reflected the change in the theory on which it was holding him. Whether that theory is a permissible one, of course, is a question the Court does not reach today.

The change in custody, and the underlying change in rationale, should be challenged in the place the Government has brought them to bear and against the person who is the immediate representative of the military authority that is detaining him. That place is the District of South Carolina, and that person is Commander Marr. The Second Circuit erred in holding that the Southern District of New York was a proper forum for Padilla's petition. With these further observations, I join the opinion and judgment of the Court.

JUSTICE STEVENS, with whom JUSTICE SOUTER, JUSTICE GINSBURG, and JUSTICE BREYER join, dissenting.

The petition for a writ of habeas corpus filed in this case raises questions of profound importance to the Nation. The arguments set forth by the Court do not justify avoidance of our duty to answer those questions. It is quite wrong to characterize the proceeding as a "simple challenge to physical custody," *ante*, at 441, that should be resolved by slavish application of a "bright-line rule," *ante*, at 449, designed to prevent "rampant forum shopping" by litigious prison inmates, *ante*, at 447. As the Court's opinion itself demonstrates, that rule is riddled with exceptions fashioned to protect the high office of the Great Writ. This is an exceptional case that we clearly have jurisdiction to decide.

I

In May 2002, a grand jury convened in the Southern District of New York was conducting an investigation into the September 11, 2001, terrorist attacks.   In response to an application by the Department of Justice, the Chief Judge of the District issued a material witness warrant authorizing Padilla's arrest when his plane landed in Chicago on May 8.[1]  Pursuant to that warrant, agents of the Department of Justice took Padilla (hereinafter respondent) into custody and transported him to New York City, where he was detained at the Metropolitan Correctional Center.   On May 15, the court appointed Donna R. Newman, a member of the New York bar, to represent him.   She conferred with respondent in person and filed motions on his behalf, seeking his release on the ground that his incarceration was unauthorized and unconstitutional.   The District Court scheduled a hearing on those motions for Tuesday, June 11, 2002.

On Sunday, June 9, 2002, before that hearing could occur, the President issued a written command to the Secretary of Defense concerning respondent.   "Based on the information available to [him] from all sources," the President determined that respondent is an "enemy combatant," that he is "closely associated with al Qaeda, an international terrorist organization with which the United States is at war," and that he possesses intelligence that, "if communicated to the U. S., would aid U. S. efforts to prevent attacks by al Qaeda"

---

[1] As its authority for detaining respondent as a material witness, the Government relied on a federal statute that provides: "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 . . . .   Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure."   18 U. S. C. § 3144.

on U. S. targets. App. A to Pet. for Cert. 57a. The command stated that "it is in the interest of the United States" and "consistent with U. S. law and the laws of war for the Secretary of Defense to detain Mr. Padilla as an enemy combatant." *Id.*, at 58a. The President's order concluded: "Accordingly, you are directed to receive Mr. Padilla from the Department of Justice and to detain him as an enemy combatant." *Ibid.*

On the same Sunday that the President issued his order, the Government notified the District Court in an *ex parte* proceeding that it was withdrawing its grand jury subpoena, and it asked the court to enter an order vacating the material witness warrant. *Padilla ex rel. Newman* v. *Bush*, 233 F. Supp. 2d 564, 571 (SDNY 2002). In that proceeding, in which respondent was not represented, the Government informed the court that the President had designated respondent an enemy combatant and had directed the Secretary of Defense, petitioner Donald Rumsfeld, to detain respondent. *Ibid.* The Government also disclosed that the Department of Defense would take custody of respondent and immediately transfer him to South Carolina. The District Court complied with the Government's request and vacated the warrant.[2]

On Monday, June 10, 2002, the Attorney General publicly announced respondent's detention and transfer "to the custody of the Defense Department," which he called "a significant step forward in the War on Terrorism." Amended Pet.

---

[2] The order vacating the material witness warrant that the District Court entered in the *ex parte* proceeding on June 9 terminated the Government's lawful custody of respondent. After that order was entered, Secretary Rumsfeld's agents took custody of respondent. The authority for that action was based entirely on the President's command to the Secretary—a document that, needless to say, would not even arguably qualify as a valid warrant. Thus, whereas respondent's custody during the period between May 8 and June 9, 2002, was pursuant to a judicially authorized seizure, he has been held ever since—for two years—pursuant to a warrantless arrest.

for Writ of Habeas Corpus in No. 02 Civ. 4445 (SDNY), Exh. A, p. 1, Record, Doc. 4. On June 11, 2002, presumably in response to that announcement, Newman commenced this proceeding by filing a petition for a writ of habeas corpus in the Southern District of New York. 233 F. Supp. 2d, at 571. At a conference on that date, which had been originally scheduled to address Newman's motion to vacate the material witness warrant, the Government conceded that Defense Department personnel had taken custody of respondent in the Southern District of New York. *Id.*, at 571–572.

## II

All Members of this Court agree that the immediate custodian rule should control in the ordinary case and that habeas petitioners should not be permitted to engage in forum shopping. But we also all agree with Judge Bork that "special circumstances" can justify exceptions from the general rule. *Demjanjuk* v. *Meese*, 784 F. 2d 1114, 1116 (CADC 1986). See *ante*, at 450, n. 18. Cf. *ante*, at 452 (KENNEDY, J., concurring). More narrowly, we agree that if jurisdiction was proper when the petition was filed, it cannot be defeated by a later transfer of the prisoner to another district. *Ex parte Endo*, 323 U. S. 283, 306 (1944). See *ante*, at 441.

It is reasonable to assume that if the Government had given Newman, who was then representing respondent in an adversary proceeding, notice of its intent to ask the District Court to vacate the outstanding material witness warrant and transfer custody to the Department of Defense, Newman would have filed the habeas petition then and there, rather than waiting two days.[3] Under that scenario, respondent's

---

[3] The record indicates that the Government had not *officially* informed Newman of her client's whereabouts at the time she filed the habeas petition on June 11. Pet. for Writ of Habeas Corpus in No. 02 Civ. 4445 (SDNY), p. 2, ¶ 4, Record, Doc. 1 ("On information and belief, Padilla is being held in segregation at the high-security Consolidated Naval Brig in Charleston, South Carolina"); Letter from Donna R. Newman to General

immediate custodian would then have been physically present in the Southern District of New York carrying out orders of the Secretary of Defense. Surely at that time Secretary Rumsfeld, rather than the lesser official who placed the handcuffs on petitioner, would have been the proper person to name as a respondent to that petition.

The difference between that scenario and the secret transfer that actually occurred should not affect our decision, for we should not permit the Government to obtain a tactical advantage as a consequence of an *ex parte* proceeding. The departure from the time-honored practice of giving one's adversary fair notice of an intent to present an important motion to the court justifies treating the habeas application as the functional equivalent of one filed two days earlier. See *Baldwin* v. *Hale*, 1 Wall. 223, 233 (1864) ("Common justice

Counsel of the Department of Defense, June 17, 2002 ("I understand *from the media* that my client is being held in Charleston, South Carolina in the military brig" (emphasis added)), Amended Pet. for Writ of Habeas Corpus in No. 02 Civ. 4445 (SDNY), Exh. A, p. 4, Record, Doc. 4. Thus, while it is true, as the Court observes, that "Padilla was moved from New York to South Carolina before his lawyer filed a habeas petition on his behalf," *ante*, at 441, what matters for present purposes are the facts available to Newman at the time of filing. When the Government shrouded those facts in secrecy, Newman had no option but to file immediately in the district where respondent's presence was last officially confirmed.

Moreover, Newman was appointed to represent respondent by the District Court for the Southern District of New York. Once the Government removed her client, it did not permit her to counsel him until February 11, 2004. Consultation thereafter has been allowed as a matter of the Government's grace, not as a matter of right stemming from the Southern District of New York appointment. Further, it is not apparent why the District of South Carolina, rather than the Southern District of New York, should be regarded as the proper forum to determine the validity of the "change in the Government's rationale for detaining" respondent. *Ante*, at 455. If the Government's theory is not "a permissible one," *ibid.*, then the New York federal court would remain the proper forum in this case. Why should the New York court not have the authority to determine the legitimacy of the Government's removal of respondent beyond that court's borders?

requires that no man shall be condemned in his person or property without notice and an opportunity to make his defence"). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris* v. *Nelson,* 394 U. S. 286, 291 (1969). But even if we treat respondent's habeas petition as having been filed in the Southern District after the Government removed him to South Carolina, there is ample precedent for affording special treatment to this exceptional case, both by recognizing Secretary Rumsfeld as the proper respondent and by treating the Southern District as the most appropriate venue.

Although the Court purports to be enforcing a "bright-line rule" governing district courts' jurisdiction, *ante,* at 449, an examination of its opinion reveals that the line is far from bright. Faced with a series of precedents emphasizing the writ's "scope and flexibility," *Harris,* 394 U. S., at 291, the Court is forced to acknowledge the numerous exceptions we have made to the immediate custodian rule. The rule does not apply, the Court admits, when physical custody is not at issue, *ante,* at 437–438, or when American citizens are confined overseas, *ante,* at 447, n. 16, or when the petitioner has been transferred after filing, *ante,* at 441, or when the custodian is "'present'" in the district through his agents' conduct, *ante,* at 445. In recognizing exception upon exception and corollaries to corollaries, the Court itself persuasively demonstrates that the rule is not ironclad. It is, instead, a workable general rule that frequently gives way outside the context of "'core challenges'" to executive confinement. *Ante,* at 435.

In the Court's view, respondent's detention falls within the category of "'core challenges'" because it is "not unique in any way that would provide arguable basis for a departure from the immediate custodian rule." *Ante,* at 442. It is, however, disingenuous at best to classify respondent's petition with run-of-the-mill collateral attacks on federal crimi-

nal convictions. On the contrary, this case is singular not only because it calls into question decisions made by the Secretary himself, but also because those decisions have created a unique and unprecedented threat to the freedom of every American citizen.

"[W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley* v. *Municipal Court, San Jose-Milpitas Judicial Dist., Santa Clara Cty.,* 411 U. S. 345, 350 (1973). With respect to the custody requirement, we have declined to adopt a strict reading of *Wales* v. *Whitney,* 114 U. S. 564 (1885), see *Hensley,* 411 U. S., at 350, n. 8, and instead have favored a more functional approach that focuses on the person with the power to produce the body, see *Endo,* 323 U. S., at 306–307.[4] In this case, the President entrusted the Secretary of De-

---

[4] For other cases in which the immediate custodian rule has not been strictly applied, see *Garlotte* v. *Fordice,* 515 U. S. 39 (1995) (prisoner named Governor of Mississippi, not warden, as respondent); *California Dept. of Corrections* v. *Morales,* 514 U. S. 499 (1995) (prisoner named Department of Corrections, not warden, as respondent); *Wainwright* v. *Greenfield,* 474 U. S. 284 (1986) (prisoner named Secretary of Florida Department of Corrections, not warden, as respondent); *Middendorf* v. *Henry,* 425 U. S. 25 (1976) (persons convicted or ordered to stand trial at summary courts-martial named Secretary of the Navy as respondent); *Strait* v. *Laird,* 406 U. S. 341, 345–346 (1972) ("The concepts of 'custody' and 'custodian' are sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California in processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction"); *Burns* v. *Wilson,* 346 U. S. 137 (1953) (service members convicted and held in military custody in Guam named Secretary of Defense as respondent); *United States ex rel. Toth* v. *Quarles,* 350 U. S. 11 (1955) (next friend of ex-service member in military custody in Korea named Secretary of the Air Force as respondent); *Endo,* 323 U. S., at 304 (California District Court retained jurisdiction over Japanese-American's habeas challenge to her internment, despite her transfer to Utah, noting absence of any "suggestion that there is no one within the jurisdiction of the District Court who is responsible for the detention of appellant and who would be an appropriate respondent").

fense with control over respondent. To that end, the Secretary deployed Defense Department personnel to the Southern District with instructions to transfer respondent to South Carolina. Under the President's order, only the Secretary—not a judge, not a prosecutor, not a warden—has had a say in determining respondent's location. As the District Court observed, Secretary Rumsfeld has publicly shown "both his familiarity with the circumstances of Padilla's detention, and his personal involvement in the handling of Padilla's case." 233 F. Supp. 2d, at 574. Having "emphasized and jealously guarded" the Great Writ's "ability to cut through barriers of form and procedural mazes," *Harris,* 394 U. S., at 291, surely we should acknowledge that the writ reaches the Secretary as the relevant custodian in this case.

Since the Secretary is a proper custodian, the question whether the petition was appropriately filed in the Southern District is easily answered. "So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim . . . even if the prisoner himself is confined outside the court's territorial jurisdiction." *Braden* v. *30th Judicial Circuit Court of Ky.,* 410 U. S. 484, 495 (1973).[5] See also *Endo,* 323 U. S., at 306 ("[T]he court may act if there is a respondent within reach of its process who has custody of the petitioner"). In this case, Secretary Rumsfeld no doubt has sufficient contacts with the Southern District properly to be served with process there. The Secretary, after all, ordered military personnel to that forum to seize and remove respondent.

---

[5] Although, as the Court points out, *ante,* at 445, the custodian in *Braden* was served within the territorial jurisdiction of the District Court, the salient point is that *Endo* and *Braden* decoupled the District Court's jurisdiction from the detainee's place of confinement and adopted for unusual cases a functional analysis that does not depend on the physical location of any single party.

It bears emphasis that the question of the proper forum to determine the legality of Padilla's incarceration is not one of federal subject-matter jurisdiction. See *ante,* at 434, n. 7; *ante,* at 451 (KENNEDY, J., concurring). Federal courts undoubtedly have the authority to issue writs of habeas corpus to custodians who can be reached by service of process "within their respective jurisdictions." 28 U. S. C. § 2241(a). Rather, the question is one of venue, *i. e.,* in which federal court the habeas inquiry may proceed.[6] The Government purports to exercise complete control, free from judicial surveillance, over that placement. Venue principles, however, center on the most convenient and efficient forum for resolution of a case, see *Braden,* 410 U. S., at 493–494, 499–500 (considering those factors in allowing Alabama prisoner to sue in Kentucky), and on the placement most likely to minimize forum shopping by either party, see *Eisel* v. *Secretary of the Army,* 477 F. 2d 1251, 1254 (CADC 1973) (preferring such functional considerations to "blind incantation of words with implied magical properties, such as 'immediate custodian'").[7] Cf. *Ex parte Bollman,* 4 Cranch 75, 136 (1807) ("It would . . . be extremely dangerous to say, that because the

---

[6] Although the Court makes no reference to venue principles, it is clear that those principles, not rigid jurisdictional rules, govern the forum determination. In overruling *Ahrens* v. *Clark,* 335 U. S. 188 (1948), the Court in *Braden* v. *30th Judicial Circuit Court of Ky.,* 410 U. S. 484 (1973), clarified that the place of detention pertains only to the question of venue. See *id.,* at 493–495 (applying "traditional venue considerations" and rejecting a stricter jurisdictional approach); *id.,* at 502 (REHNQUIST, J., dissenting) ("Today the Court overrules *Ahrens*"); *Moore* v. *Olson,* 368 F. 3d 757, 758 (CA7 2004) ("[A]fter *Braden* . . . , which overruled *Ahrens,* the location of a collateral attack is best understood as a matter of venue"); *Armentero* v. *INS,* 340 F. 3d 1058, 1070 (CA9 2003) ("District courts may use traditional venue considerations to control where detainees bring habeas petitions" (citing *Braden,* 410 U. S., at 493–494)).

[7] If, upon consideration of traditional venue principles, the district court in which a habeas petition is filed determines that venue is inconvenient or improper, it of course has the authority to transfer the petition. See 28 U. S. C. §§ 1404(a), 1406(a).

prisoners were apprehended, not by a civil magistrate, but by the military power, there could be given by law a right to try the persons so seized in any place which the general might select, and to which he might direct them to be carried").

When this case is analyzed under those traditional venue principles, it is evident that the Southern District of New York, not South Carolina, is the more appropriate place to litigate respondent's petition. The Government sought a material witness warrant for respondent's detention in the Southern District, indicating that it would be convenient for its attorneys to litigate in that forum. As a result of the Government's initial forum selection, the District Judge and counsel in the Southern District were familiar with the legal and factual issues surrounding respondent's detention both before and after he was transferred to the Defense Department's custody. Accordingly, fairness and efficiency counsel in favor of preserving venue in the Southern District. In sum, respondent properly filed his petition against Secretary Rumsfeld in the Southern District of New York.

### III

Whether respondent is entitled to immediate release is a question that reasonable jurists may answer in different ways.[8] There is, however, only one possible answer to the question whether he is entitled to a hearing on the justification for his detention.[9]

---

[8] Consistent with the judgment of the Court of Appeals, I believe that the Non-Detention Act, 18 U. S. C. § 4001(a), prohibits—and the Authorization for Use of Military Force Joint Resolution, 115 Stat. 224, adopted on September 18, 2001, does not authorize—the protracted, incommunicado detention of American citizens arrested in the United States.

[9] Respondent's custodian has been remarkably candid about the Government's motive in detaining respondent: "'[O]ur interest really in his case is not law enforcement, it is not punishment because he was a terrorist or working with the terrorists. Our interest at the moment is to try and find out everything he knows so that hopefully we can stop other terrorist

At stake in this case is nothing less than the essence of a free society. Even more important than the method of selecting the people's rulers and their successors is the character of the constraints imposed on the Executive by the rule of law. Unconstrained executive detention for the purpose of investigating and preventing subversive activity is the hallmark of the Star Chamber.[10] Access to counsel for the purpose of protecting the citizen from official mistakes and mistreatment is the hallmark of due process.

Executive detention of subversive citizens, like detention of enemy soldiers to keep them off the battlefield, may sometimes be justified to prevent persons from launching or becoming missiles of destruction. It may not, however, be justified by the naked interest in using unlawful procedures to extract information. Incommunicado detention for months on end is such a procedure. Whether the information so procured is more or less reliable than that acquired by more extreme forms of torture is of no consequence. For if this Nation is to remain true to the ideals symbolized by its flag, it must not wield the tools of tyrants even to resist an assault by the forces of tyranny.

I respectfully dissent.

---

acts.'" 233 F. Supp. 2d 564, 573–574 (SDNY 2002) (quoting News Briefing, Dept. of Defense (June 12, 2002), 2002 WL 22026773).

[10] See *Watts* v. *Indiana*, 338 U. S. 49, 54 (1949) (opinion of Frankfurter, J.). "There is torture of mind as well as body; the will is as much affected by fear as by force. And there comes a point where this Court should not be ignorant as judges of what we know as men." *Id.*, at 52.