Kevin BONITTO, Petitioner,

v.

**BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,** Respondent.

**Civil No. B–07–226.**

United States District Court, S.D. Texas, Brownsville Division.

April 17, 2008.

---

Kevin Bonitto, Los Fresnos, TX, Pro Se.

Rene Carlo Benavides, US Attorney's Office, McAllen, TX, for Respondent.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HILDA TAGLE, District Judge.

Before the Court is the Magistrate Judge's Report and Recommendation in the above-referenced cause of action. After a de novo review of the file, the Magistrate Judge's Report and Recommendation is hereby ADOPTED. It is, therefore, ORDERED, ADJUDGED, and DECREED that:

1. Bonitto's petition under 28 U.S.C. § 2241 is GRANTED CONDITIONALLY.

2. Respondent shall undertake a review of Petitioner Bonitto's custody status in accordance with the provisions of 8 C.F.R. § 241.4 by May 26, 2008.

3. If Respondent fails to provide Petitioner with the process required by 8 C.F.R. § 241.4 by May 26, 2008, Petitioner shall be released from confinement subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

4. Respondent shall file a status report with this Court no later than May 26, 2008.

5. Petitioner's request for injunctive relief, attorney's fees, and costs is DENIED.

6. Respondent's Motion to Dismiss is DENIED.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

FELIX RECIO, United States Magistrate Judge.

Before the Court is Kevin Bonitto's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1). Respondent has filed a Motion to Dismiss, which will also be considered herein. (Doc. 22). For the following reasons, Petitioner's habeas petition should be GRANTED CONDITIONALLY and Respondent's Motion to Dismiss should be DENIED.

### BACKGROUND

Petitioner Kevin Bonitto is a native and citizen of the Jamaica. He is currently detained at the Port Isabel Detention Center in Los Fresnos, Texas pending his removal from the United States. He originally entered this country at age twelve on March 13, 1996, as a lawful permanent resident. Bonitto has since been ordered removed by decision of an immigration judge ("IJ") for having been convicted of a drug trafficking crime and an aggravated felony. His removal period under 8 U.S.C. § 1231(a)(1)(B) began on June 21, 2007.

On October 11, 2001, Bonitto was convicted of the criminal sale of a controlled substance near school grounds and sentenced to serve six years and two months in prison. On June 21, 2001, DHS encountered Bonitto at the Green Correctional facility in New York City and placed him in DHS custody at the Buffalo Detention Center in order to prosecute his immigration charges. A Notice to Appear charged Bonitto as removable on March 15, 2002, and on November 6, 2002, an IJ ordered Bonitto removed to Jamaica. On March 6, 2003, the Board of Immigration Appeals ("BIA") denied his appeal and summarily affirmed the IJ's decision.

On June 21, 2007, Bonitto was released from the custody of the New York Department of Correctional Services into ICE custody and was thereafter detained pending his removal to Jamaica pursuant to 8 U.S.C. § 1231.[1] On November 23, 2007, Bonitto's deportation officer completed a file review, a Post Order Custody Review ("POCR") worksheet, and conducted a personal interview with Bonitto. In the POCR worksheet, the officer checked the box for "no" in response to the question regarding whether Bonitto appeared to meet any of the criteria for continued detention notwithstanding the likelihood of removal, including whether he was determined to be "specially dangerous." *See* Respondent's Mot. to Dismiss, Attachment 1, at 7. (Doc. 22). However, in the document entitled "Officer Comments/Analysis and Recommendation" the same officer stated that he believes Bonitto will pose a danger to society if released and recommends Bonitto's continued detention.

On December 3, 2007, the Field Office Director agreed with the deportation officer and determined Bonitto should continue in custody without comment. On the same day Bonitto was served with a document entitled "Decision to Continue Detention." The document advised Bonitto that ICE had decided to continue his detention, but did not state any grounds for this decision. The document also stated that if Bonitto was not released by December 17, 2007, jurisdiction of Bonitto's custody decisions would be transferred to the Headquarters Post Order Detention Unit ("HQPDU").

Petitioner filed this habeas action on December 27, 2007, alleging that he had been in post-removal detention for more than the six-month presumptively reason-able period and that there was no significant likelihood of removal in the reasonably foreseeable future. ICE responded to Bonitto's habeas petition on March 7, 2008 with a motion to dismiss, and included in its response records of the above-detailed custody determinations. ICE's motion to dismiss does not mention a 180–day review by HQPDU nor does it contain records of such a review. Based on the record before it, the Court assumes Bonitto has yet to receive his 180–day custody review.

## ALLEGATIONS

In his petition, Bonitto challenges his detention on three grounds. He alleges that he is being unlawfully detained because there is no significant likelihood of his removal to Jamaica in the reasonably foreseeable future. He first alleges his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). He alleges that he has been in post-removal order detention for more than six months, and that his continued deportation violates the "presumptively reasonable" period set forth by the Supreme Court for post-removal detention in *Zadvydas*. Secondly, he alleges that his post-removal detention violates his Constitutional right to substantive due process. Lastly, he alleges that his post-removal detention violates his Constitutional right to procedural due process.

To support his claim that there is no significant likelihood of removal in the reasonably foreseeable future and that he should be released, Bonitto alleges that he has fully cooperated with deportation officials. He claims he has spoken to the

---

**1.** Pursuant to 1231(a), the removal period for an alien who has been ordered removed but is incarcerated at the time of the removal order begins on the date an alien is released from state confinement. Accordingly, Bonitto's removal period began on June 21, 2007.

Jamaican consulate and requested travel documents, given ICE his passport and LPR card, willfully participated in all requested interviews by ICE officials, and completed all necessary forms to facilitate his removal. He also claims that ICE is "aware" that his return to Jamaica cannot be effectuated in the reasonably foreseeable future. *See* Pet's 2241 Mot., at 5–6. (Doc. 1).

He requests to be released subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5. He also prays for an injunction against his further unlawful detention, attorney's fees and costs under the Equal Access to Justice Act, and any further relief the Court deems just and proper. *Id.* at 18–19.

### PROPER RESPONDENT

Petitioner has named Immigration and Customs Enforcement ("ICE") as the respondent to his petition. The United States Supreme Court has made clear that for purposes of a habeas corpus petition under 2241, the only proper respondent is the immediate custodian of the petitioner who has the ability to produce the petitioner before the Court. *See Rumsfeld v. Padilla*, 542 U.S. 426, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). The Court notes that the proper Respondent is the warden of the facility at which Petitioner is detained.

2. The 90–day period begins on the latest of (i) the date the removal order becomes administratively final; (ii) if the order is judicially reviewed and the court issues a stay of removal, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). Because Bonitto was in state confinement for his criminal convictions, his removal period started the day he was released, June 21, 2007.

### DISCUSSION

#### I. Jurisdiction Under Section 2241

A petition under § 2241 is the proper vehicle for a petitioner to use when he seeks to challenge the legality and constitutionality of post-removal-period detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). The district where the petitioner is detained "is the only district that has jurisdiction to entertain a defendant's § 2241 petition." *Lee v. Wetzel*, 244 F.3d 370, 373–75 (5th Cir.2001). Bonitto's petition complains of his detention when removal is no longer reasonably foreseeable, and Bonitto is detained in Port Isabel within the Southern District of Texas. Therefore, the district court in Brownsville has jurisdiction over these allegations.

#### II. Federal Law on Post–Removal Detention.

##### a. Statutory Framework and Constitutional Constraints.

The statutory provision that governs the Court's review in this case is 8 U.S.C. § 1231. Under § 1231(a)(1)(A), when an alien is ordered removed the Attorney General "shall remove the alien from the United States within a period of 90 days."[2] During this 90–day removal period, the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE")[3] are required to de-

3. Through the Regulations implementing 8 U.S.C. 1231, the Attorney General delegated his immigration authority to different DHS and ICE officials for a number of the Attorney General's discretionary functions in the post-removal-order custody review process. In order to avoid confusion and complication that often arises from the provision of unnecessary information, this opinion refers to those officials simply as DHS or ICE unless the specific official is germane to a point of law involved in the current habeas petition.

tain the alien. Upon the conclusion of the 90–day removal period the statute allows for either continued detention or release under supervision. 8 U.S.C. § 1231(a). Although the statute gives the Attorney General the discretion to continue detaining an alien in this situation, this detention is subject to the limits of the Fifth Amendment's Due Process clause. *See Zadvydas,* 533 U.S. at 690–692, 121 S.Ct. 2491.

In *Zadvydas v. Davis* the Supreme Court interpreted 1231(a)(6), the provision that allows for detention beyond the 90–day removal period, to limit post-removal-period detention to a period "reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689, 121 S.Ct. 2491. The Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701, 121 S.Ct. 2491. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is not authorized by the statute. *Id.* at 699, 121 S.Ct. 2491. Under *Zadvydas,* if an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future in a habeas corpus petition, the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701, 121 S.Ct. 2491.

An alien who refuses to comply with the government's removal efforts may be detained indefinitely. *See* 8 U.S.C. § 1253(a). The government must warn such aliens regularly of the consequences of their non-compliance, but if an alien refuses to comply the government is not required to review that alien's continued detention under the procedures outlined below.

### b. The Implementing Regulations and Custody Review Process.

#### i. The 90–day POCR.

After the Supreme Court decided *Zadvydas,* DHS promulgated regulations to implement the newly established constitutional constraints. *See* 8 C.F.R. § 241.4; 66 Fed.Reg. 56967, 56969 (Nov. 21, 2001) (explaining the *Zadvydas* decision and stating that the new regulations were issued to provide a process for DHS to determine whether there is a significant likelihood of removal in the reasonably foreseeable future). Under the regulations, the district director is required to conduct a post-order custody review ("POCR") before the 90–day removal period expires if the alien's removal cannot be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i). In conducting the POCR, officials must review the alien's records and any and all documents submitted by the alien and must inform the alien of the decision. *See* 8 C.F.R. § 241.4(h)(1).

The 90–day POCR essentially considers three criteria (1) flight risk; (2) danger to the community; and (3) likelihood of obtaining travel documents. *See* 8 C.F.R. § 241.4(e) & (f). The district director or Director of the Detention and Removal Field Office decides whether the alien is released from custody or continued in detention pending removal or further review of his or her custody status. 8 C.F.R. § 241.4(k)(1)(i).

#### ii. The 180–day POCR.

If the alien is not released or removed at the time of the initial POCR and has cooperated with the removal process, he or she must receive a second review three months later, or after 180 days have passed from the date the removal period began. 8 C.F.R. § 241.4(k)(2)(ii). The 180–day review is conducted by the HQPDU and considers whether there is a significant likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13. If an alien is not likely to be removed in

the reasonably foreseeable future he or she may still be detained if the alien meets one of four "special circumstance" criteria.[4] *See* 8 C.F.R. § 241.14. The 180–day determination looks at whether it is reasonable to believe that travel documents can be obtained, given the federal government's efforts, the receiving country's willingness to facilitate the process, and other factors. *See* 8 C.F.R. § 241.4(e) & (f). There is no specific time-period for removal when the DHS is actively attempting to remove the alien, however the government's prospects for a timely removal must be reasonable under the circumstances in order to continue detention beyond 180–days.

If the HQPDU determines that removal is not likely in the foreseeable future, the alien must be released unless his continued detention is justified by a special circumstance. A court-granted stay of removal or an alien's failure to comply with removal efforts can extend detention indefinitely and remove an alien from the POCR review process.

### iii. Request for Release by an Alien under Section 241.13.

Aside from the required review procedures outlined in § 241.4, an alien may also request a determination from the Headquarters Post–Order Detention Unit of whether there is a significant likelihood of removal in the reasonably foreseeable future at anytime after a removal order becomes final. *See* 8 C.F.R.

§ 241.13(d)(3). The alien must submit a written request for release and show that there is *no significant likelihood of removal* in the reasonably foreseeable future. 8 C.F.R. § 241.13(d)(1). If an alien submits a request before the expiration of the removal period, the HQPDU may postpone its consideration of the request until the removal period expires. *See* 8 C.F.R. § 241.13(d)(3).

In deciding whether an alien should be released under § 241.13, the regulations provide HQPDU will consider the history of the alien's efforts to comply with the order of removal, the history of DHS's efforts to remove aliens to the country in question, including the ongoing nature of DHS's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. *See* 8 C.F.R. § 241.13(f).

If the HQPDU denies the alien's request for release under § 241.13, the alien is still entitled to the normal § 241.4 review procedures outlined above. As under the normal custody review process, DHS may continue detaining an alien who has requested release under § 241.13 if it determines there are special circumstances justifying detention notwithstanding the likelihood of removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(e)(6).

---

4. The four types of aliens that may be detained beyond 180 days even if they are not likely *to be removed in the reasonably fore-* seeable future are (1) aliens with a highly contagious disease that threatens public safety; (2) aliens detained on account of serious adverse foreign policy consequences of release; (3) aliens detained on account of security or terrorism concerns; and (4) aliens determined to be especially dangerous. Certifying that an alien meets one of these criteria requires substantial factual support and the determination is made by either an immigration judge or the concurrence of senior government officials. *See* 8 C.F.R. § 241.14.

### III. Legal Analysis of Petitioner Bonitto's Post–Removal–Order Detention.

### a. Petitioner has not satisfied his burden of proof under *Zadvydas* and his habeas petition cannot succeed on this ground.

Respondent argues that Bonitto's claims are "not ripe for review" because "it is likely DHS will be able to obtain travel documents in the foreseeable future." *See* Mot. to Dismiss at 3. (Doc. 22). Respondent offers no legal argument or analysis of why Bonitto's claims are not ripe for review, and the Court is left to speculate as to what Respondent may have meant. However, owing to a detailed and lengthy examination of the law on post-removal-order detention, the Court has become well-versed in the arguments ICE officials customarily make in these cases. If Respondent had elaborated, the Court can suppose it would argue that Petitioner has not met his burden of proof under *Zadvydas*.

■ The Supreme Court in *Zadvydas* placed the initial burden of proof on the alien to provide "good reason to believe" that there is no likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. The Fifth Circuit reiterated this in *Andrade v. Gonzales* when it found a habeas claim under *Zadvydas* without merit because it "offered nothing beyond conclusory state-

ments" suggesting that removal was not foreseeable. 459 F.3d 538, 543–544 (5th Cir.2006). Therefore, under *Zadvydas* and *Andrade*, ICE may detain an alien beyond the removal period *until* it has been shown that there is no significant likelihood of removal within the reasonably foreseeable future. *Id.*

■ Whether Bonitto has shown "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future is difficult to determine based on the record before the Court. The Court notes that Bonitto does point to *some* evidence that his removal is unlikely, including evidence of his full cooperation with ICE authorities to aid in his removal and the expiration of the 6–month presumptively reasonable period. The Respondent does not rebut this evidence nor mention any evidence to support its bald assertion that "it is likely DHS will be able to obtain travel documents in the foreseeable future." *See* Pet's 2241 Mot., at 3.

Despite the lackluster effort by Respondent[5] to show this Court why the present § 2241 action should be dismissed, the Court finds that based on the current record, Bonitto has not alleged sufficient evidence as required for the burden to shift to the DHS under *Zadvydas*. However, the Court finds it prudent to note that Petitioner Bonitto is proceeding *pro se* and reminds Respondent of a federal court's duty to liberally construe habeas petitions filed by *pro se* petitioners.[6] Nonetheless,

5. The Respondent's Motion to Dismiss is three pages long and includes a group of documents, presumably attached as exhibits. The attachments include the sparse records from Bonitto's 90–day POCR, including a very basic and brief run-down of the efforts to secure travel documents made by the deportation officer who completed the POCR worksheet. The efforts amount to making contact with the Jamaican consulate and information from the consulate on November 23, 2007, that Bonitto's documents were being re-

viewed by the Jamaican Ministry of Health. None of these efforts were mentioned or explained in the Motion to Dismiss.

6. Bonitto has filed a motion for appointment of counsel, which the Court denies because the interests of justice do not yet require appointed counsel at this stage. *See* 18 U.S.C. § 3006A(a)(2)(B). However, depending on the progress of efforts to remove Petitioner, the case may become sufficiently com-

even a liberal reading of Bonitto's petition cannot shift the burden of proof with nothing more on the record.[7] Bonitto's claim under *Zadvydas* cannot succeed at this juncture.

**b. Respondent's failure to comply with the review procedures outlined in the applicable regulations violates Petitioner's procedural due process rights.**

**i. Substantive Versus Procedural Due Process Analysis.**

■ On the outset the Court determines that the rights involved in this habeas corpus action are procedural due process rights, despite Petitioner's allegations of both substantive and procedural due process violations. The substantive component of the Fifth Amendment's Due Process clause bars certain offensive governmental actions "regardless of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In substantive due process analysis the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Bonitto does not allege any conduct by DHS that is egregious or that would shock the conscious, and nothing in the record suggests such conduct.

■ The matter is appropriately analyzed under procedural due process standards, which require governmental entities to provide an individual procedural rights before it may deprive him or her of life, liberty or property. *See Mathews v. Eldridge,* 424 U.S. 319, 332–333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Traditionally, procedural due process protects an individual's right to be heard "at a meaningful time and in meaningful manner." *Id.* at 333, 96 S.Ct. 893 (internal quotations omitted). It is such procedural rights that are at issue in the current habeas petition.

**ii. Judicial Review of Executive Agency Non–Compliance with Administrative Regulations under the Due Process Clause.**

■ It is central to our concept of due process that government officials, no less than private citizens, are bound by rules of law. The Fifth Circuit has held that it is a denial of procedural due process for any government agency to fail to follow its own regulations providing procedural safeguards to persons involved in adjudicative processes before it. *Government of Canal Zone v. Brooks,* 427 F.2d 346, 347 (5th

plex for the interests of justice to require the appointment of legal representation.

7. The Court notes that a simpler and more appropriate forum for an alien unrepresented by counsel to make the showing laid out in *Zadvydas* is through the post-order custody review process created by DHS regulations and detailed below. DHS created and amended this process to comply with due process constraints and the Supreme Court's *Zadvydas* decision. An administrative procedure is a simpler forum to investigate the facts of the post-removal-order detention situation, as DHS would have a much more complete record before it than the Court cur-

rently has, owing to the fact that DHS has access to all of an alien's files and is aware of all of its own ongoing efforts to secure removal. A petitioner proceeding *pro se* has few resources, monetary and informational, to conduct discovery and prepare a sufficient record in a habeas action. However, in an administrative proceeding the need for legal expertise and discovery is not as prominent. The relative ease of administrative adjudication compared to habeas review is no doubt one reason why DHS promulgated regulations to create a custody review process that provides an alien his due process rights.

Cir.1970). Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged. *Vitarelli v. Seaton*, 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).

The regulations involved here do not merely facilitate internal agency housekeeping, but rather afford important and imperative procedural safeguards to detainees. *See United States v. Caceres*, 440 U.S. 741, 760, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). This Court must insist on DHS's compliance with the post-order custody regulations if Bonitto's detention is to remain constitutional. *Id.* (noting that the Supreme Court has insisted on forcing agency compliance with their own regulations when the regulations afford individual rights and protections).

The Court is well aware of the executive branch's primacy in this area of law. The Supreme Court has said that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting *INS v. Abudu*, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)). Nevertheless, the judiciary is the final authority on issues of constitutionality and statutory construction and must reject administrative actions that violate the constitution or laws of the nation.

■ It is important to emphasize that the Court here is not reviewing and reversing the *manner* in which agency discretion was exercised, but is instead dealing with DHS's failure to exercise its discretion altogether and provide aliens with the applicable process contrary to valid existing regulations. *See Accardi*, 347 U.S. at 268, 74 S.Ct. 499. As the Supreme Court has made clear, there is a "strong tradition in habeas corpus law" that subjects an agency's failure to exercise discretion, unlike an agency's unwise exercise of given discretion, to habeas corpus review. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 307, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (internal citations and quotations omitted).

Detention beyond the removal period may be maintained only upon compliance with applicable process. For aliens ordered removed like Bonitto, that process is specified in 8 C.F.R. § 241.4 and § 241.13. As the Supreme Court warned in *Zadvydas*, serious constitutional problems arise when § 1231 permits indefinite deprivation of human liberty without procedural safeguards. *See Zadvydas*, 533 U.S. at 692, 121 S.Ct. 2491. The regulations promulgated in response to *Zadvydas* aim to provide such safeguards. DHS cannot constitutionally continue to detain Bonitto without complying with the procedures laid out in the regulations.

### iii. Zadvydas *and the Post–Order Custody Review Process.*

■ The Supreme Court has held that the Fifth Amendment's Due Process clause applies to aliens in post-removal-order detention. *See Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. In interpreting the post-removal-order detention statute to include an implicit reasonableness limit, the Supreme Court noted "the serious constitutional problem arising out of a statute that … permits indefinite, perhaps permanent, deprivation of human liberty without such (procedural) protection is obvious." *Id.* at 692, 121 S.Ct. 2491.

In response to *Zadvydas,* the regulations governing post-removal-order detention were amended to comply with the Constitutional concerns illuminated in *Zadvydas.* The amended regulations, 8 C.F.R. §§ 241.13 and 241.4, reflect the concerns of the *Zadvydas* Court and provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements. Because these regulations confer important rights upon aliens ordered removed, DHS is bound by these regulations.

#### iv. Status of Bonitto's Post–Order Custody Review to date.

■ It appears that DHS has failed to comply with its own custody-review procedures. Although the notice of ICE's decision in Bonitto's first POCR states that jurisdiction would transfer to HQPDU on December 17, 2007, presumably in order to conduct the 180–day POCR mandated by 8 C.F.R. § 241.4(k)(2)(ii), there is no evidence in the record to show that ICE has conducted a 180–day custody review. The 180–day review was due by December 21, 2007. To date more than nine months, or 270 days, have elapsed since Bonitto's removal period began and he has still not received the POCR required after 180–days of post-removal-order detention.

Further, the Court notes that Bonitto's 90–day POCR occurred almost two months late and contains little basis for the decision to continue detention. In making the 90–day custody determination, ICE must consider its ability to obtain travel documents for the alien. *See* 8 C.F.R. § 241.4(g)(3). The regulations also state that a decision to continue custody "shall briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). However, neither the recommendation to continue detention by Bonitto's deportation officer nor the notice provided to Bonitto to inform him of ICE's decision to continue his detention states any factual grounds or bases for the decision.

The notice merely informs Bonitto that "it has been determined that you will not be released from the custody of U.S. Immigration and Customs Enforcement (ICE) at this time." The recommendation states, in its entirety,

"After careful review of the subject's A-file and documentation listed above, it is the opinion of this Officer that the subject is kept in detention. This Officer believes that if released to the general public he will pose a danger to society. Subject has convictions involving sale drugs, his removal from the U.S. is expected to be effected with in the reasonable foreseeable future therefore I recommend continued detention." (sic)

*See* Mot. to Dismiss, Attachment 1. However, in the POCR worksheet, the officer determined that Bonitto did not appear to be specially dangerous or likely to be violent in the future, such as would justify continued detention regardless of the likelihood of removal in the foreseeable future under 8 C.F.R. § 241.14(f). *Id.* at 7. None of the documents from the 90–day POCR mention the progress of ICE's efforts to obtain travel documents, the status of repatriation of Jamaican nationals, or any other information that would relate to the likelihood of removal in the reasonably foreseeable future.

The Court recognizes that ICE bears a heavy load in implementing the procedures outlined in its regulations in order to provide aliens ordered removed with essential procedural rights. Federal courts are not here to review every small mistake made by an executive agency in implementing their own regulations. However, Bonitto's procedural due process rights have been violated by DHS's complete failure to provide the required 180–day review, which

was due more than three months ago. The Court's decision that Bonitto's procedural due process rights have been violated can and does rest wholly on the failure of DHS to provide the required 180–day POCR. However the Court notes the shortcomings in the 90–day POCR to caution DHS that such shortcomings are potentially harmful. DHS's denial of release to Bonitto at the 90–day POCR juncture may be correct or incorrect, but at present it appears to lack a reasoned basis. If the POCR decisions made by DHS under the regulations in fact lack such a basis, the decisions would raise due process concerns and run afoul of DHS's own regulations.

Conclusory statements that removal is "expected in the reasonable foreseeable future" or that an alien would "pose a danger to society" if released, with no factual basis or explanation, teeters dangerously close to a perfunctory and superficial pretense instead of a meaningful review sufficient to comport with due process standards. The Court reminds DHS that the POCR process contemplated by the regulations is a meaningful individualized review, as the interest involved is the "most elemental of liberty interests-the interest in being free from physical detention." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).

### IV. Conclusion.

Petitioner does not make a showing that his removal is unlikely to occur in the reasonably foreseeable future, as required by *Zadvydas* in order to shift the burden to DHS to rebut that showing. Accordingly, his claim under *Zadvydas* fails.

However, by failing to afford Bonitto the required 180–day review, DHS has failed to provide Petitioner with the procedural safeguards contained in the regulations implementing the post-removal-order detention statute. DHS cannot constitutionally detain Bonitto without complying with these safeguards, regardless of the fact that Bonitto does not here meet his burden under *Zadvydas*. *Zadvydas* allows DHS to continue detaining an alien after the expiration of the removal period *until it has been determined* that there is no significant likelihood of removal in the reasonably foreseeable future. However, the determination required by *Zadvydas* cannot be made if DHS fails to conduct hearings to make such determinations and fails to provide aliens with the procedures due to them under the regulations. Petitioner Bonitto's detention violates his procedural due process rights under the Constitution of the United States. Accordingly, his petition for writ of habeas corpus should be granted conditionally.

### RECOMMENDATION

For the aforementioned reasons, this Court recommends that the petition for a writ of habeas corpus should be GRANTED CONDITIONALLY. Respondent will be afforded a period of sixty (60) days within which to provide Petitioner a meaningful post-removal custody review, as contemplated in 8 C.F.R. §§ 241.4 and 241.13. If such process is not provided, the Petitioner is to be released unless his removal has been effectuated by that time. Respondent shall file a status report to the Court no later than May 26, 2008 that shall include copies of any and all administrative records used in the review process under the applicable regulations.

The Court further recommends that Respondent's Motion to Dismiss be DENIED and that Bonitto's request for injunctive relief, attorneys' fees, and costs be DENIED.

### NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusion,

and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996).

DONE at Brownsville, Texas, this 2nd day of April 2008.