**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2314
_____

LAWSON SEAN ALEXANDER,
Appellant

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA;
SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY;
THOMAS DECKER, Philadelphia Field Office Director;
CRAIG A. LOWE, Warden, Pike County Correctional Facility
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 3:12-cv-00159)
District Judge:  Honorable William J. Nealon
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 4, 2012
Before:  JORDAN, HARDIMAN and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 4, 2012)
_____

OPINION
_____

PER CURIAM

Lawson Alexander appeals the denial of his 28 U.S.C. § 2241 petition.  We will

affirm in part, vacate in part, and remand for further proceedings.

Alexander is a native and citizen of Grenada, who in 2008 was convicted of a

marijuana-related offense in Pennsylvania; as a result, he was placed into removal proceedings. The Board of Immigration Appeals (BIA) dismissed Alexander's appeal on July 11, 2011, after which he sought our review. We declined to grant his request for a stay of removal on September 28, 2011, and thereafter denied his petition for review on December 28, 2011. See Alexander v. Att'y Gen., 456 F. App'x 134 (3d Cir. 2011), cert. denied, 132 S. Ct. 2722 (2012).

During the removal process, Alexander has been detained in Immigration and Customs Enforcement (ICE) custody. The record reflects that he has received two decisions to continue his detention pending removal: the first, dated October 17, 2011, informed him that he "appear[ed] to pose a flight risk as well as a threat to the community," and explained that he had "not taken any measures, as instructed in form I-229, to assist ICE with obtaining a travel document," while also noting that ICE was "working on [his] travel document, which [wa]s expected in the foreseeable future"; the second, dated January 20, 2012, revealed that a still-pending travel-document request had been submitted on his behalf to the government of Grenada, with removal expected "in the reasonably foreseeable future."

Shortly after receiving this second decision to continue detention, Alexander filed a petition pursuant to 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania. He argued that, pursuant to Zadvydas v. Davis, 533 U.S. 678, 701–02 (2001), the "six-month presumptively reasonable removal period" for which he could be held "ended on January 11, 2012." Pet. ¶ 20, ECF No. 1. Alexander insisted

that the Government's accusations of uncooperative behavior were false, and that he had "cooperated fully with all efforts by ICE to remove [him] from the United States." Pet. ¶ 16. In sum, he claimed that his continued detention contravened the precepts of 8 U.S.C. § 1231(a)(6), as filtered through Zadvydas, as well as violating substantive and procedural due process. Subsequent submissions confirmed that Alexander also intended to attack ICE's failure to comply with its own regulations as pertaining to his removal and custody-review process.

In his Report and Recommendation, the Magistrate Judge recommended denying the petition, concluding inter alia that Alexander had failed to provide evidence that there was a lack of significant likelihood of swift removal in the reasonably foreseeable future. However, the Magistrate Judge emphasized that Alexander's continued detention could *become* unreasonable in the future. The District Court adopted the Report and Recommendation and denied the petition without prejudice. See Alexander v. Holder, No. 3:12-CV-159, 2012 U.S. Dist. LEXIS 48706, at *3–5 (M.D. Pa. Apr. 4, 2012). Alexander filed a timely notice of appeal.

We have jurisdiction under 28 U.S.C. § 1291. Cf. Glaus v. Anderson, 408 F.3d 382, 386 (7th Cir. 2005) (concluding that jurisdiction was properly exercised over an appeal of a without-prejudice § 2241 dismissal when "no amendment [the petitioner] could make to *this* petition c[ould] save it" (emphasis in original)). We conduct a plenary review of the District Court's legal conclusions and apply a clearly erroneous standard to its factual findings. Cradle v. United States ex rel. Miner, 290 F.3d 536, 538 (3d Cir.

2002). The submissions of detained aliens proceeding pro se are to be liberally construed. See Diop v. ICE/Homeland Sec., 656 F.3d 221, 224 (3d Cir. 2011).

United States Code Title 8 section § 1231 governs the detention of aliens who have been ordered removed. It requires that aliens who have committed aggravated felonies be detained during a ninety-day removal period.[1] 8 U.S.C. § 1231(a)(2). However, certain classes of aliens, including criminal aliens, "may be detained *beyond* the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added). Section 1231(a)(6) encompasses those, such as Alexander, who "have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." Diouf v. Napolitano, 634 F.3d 1081, 1085 (9th Cir. 2011). While the language of section 1231(a)(6) does not impose clear statutory limits, temporal or otherwise, on the Government's ability to detain aliens prior to their removal, the Supreme Court in Zadvydas held that after a six-month period of presumptively reasonable detention, the alien may "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the

---

[1] The parties have referred to July 11, 2011, the date the BIA dismissed Alexander's appeal, as the relevant date for calculating the presumptive reasonableness of his continued detention. However, at least one Court has suggested that the "more sensible reading" of 8 U.S.C. § 1231(a)(1)(B) would begin the removal period when a Court of Appeals, reviewing a timely filed petition for review, denies a first motion to stay removal. See Prieto-Romero v. Clark, 534 F.3d 1053, 1059–60 & n.5 (9th Cir. 2008). As we have not addressed this question in a precedential opinion, we assume without deciding that the July 11 date, which is more generous to Alexander's claim of unjustifiably extended confinement, is the controlling one.

Government "must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Zadvydas does not delineate the boundaries of evidentiary sufficiency, but it suggests that an inversely proportional relationship is at play: the longer an alien is detained, the less he must put forward to obtain relief. Id.

However, Zadvydas is not the only word on post-removal detention; regulations promulgated around the time of, and after, the Zadvydas decision established a series of processes for determining whether an alien should be released from custody after the expiration of the ninety-day removal period. See, e.g., Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (2001). As currently amended, 8 C.F.R. §§ 241.4 ("Continued detention of inadmissible, criminal, and other aliens beyond the removal period.") and 241.13 ("Determination of whether there is a significant likelihood of removing a detained alien in the reasonably foreseeable future.") set procedures for dealing with situations like Alexander's.[2] For example, 8 C.F.R. § 241.4(g)(5) addresses an alien's failure to comply with aspects of the removal process.

In his petition, Alexander invoked ICE's noncompliance with these regulations, albeit in a cursory fashion. See Pet. ¶ 19. He later expanded his allegations, arguing that the Government had not followed the required review procedures, and had not provided a

---

[2] Indeed, some of the regulations may be the presumptive tool for testing continued detention, possibly eliminating independent reliance on Zadvydas. See Hernandez-Carrera v. Carlson, 547 F.3d 1237, 1256–57 (10th Cir. 2008) (examining 8 C.F.R. § 241.14, which allows for continued detention of removable aliens who present "special circumstances," in the context of the deference normally owed to agency interpretations of its governing statutes).

5

"reasoned basis" for continuing to detain him. See Pet'r.'s Resp. 8–9, ECF No. 8. Throughout, too, Alexander challenged the Government's claim that he had failed to cooperate with ICE instructions.

In ruling on Alexander's petition, the District Court analyzed Alexander's Zadvydas argument, finding it wanting. We agree with the District Court that Alexander's evidentiary proffer, as presented before the District Court, was not enough to show that removal was unlikely in the foreseeable future, given Alexander's current period of detention (although, as we have drifted past the one-year mark, concerns will only continue to grow). But the District Court did not address Alexander's alternative regulatory arguments, either directly or as pursuant to an alleged deprivation of due process. A failure to satisfy Zadvydas may not necessarily be fatal to an alien's ability to prevail on an alternative ground predicated on regulatory non-compliance. See, e.g., Bonitto v. ICE, 547 F. Supp. 2d 747 (S.D. Tex. 2008) (adopting Magistrate Judge's report and recommendation). While we might, in other contexts, be able to review these claims in the first instance, our review is hampered by the minimal evidentiary record compiled below—sufficient to resolve the Zadvydas claim as it stood, perhaps, but inadequate to determine whether the agency complied with its regulatory obligations. Accordingly, we will vacate in part. See Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008). On remand, the District Court may wish to solicit additional discovery and/or conduct an evidentiary hearing, as its fact-finding (especially with regard to resolving the matter, in active dispute, of whether Alexander actually failed to comply

6

with removal-related instructions) would be invaluable should this case return to us on appeal; moreover, because regulatory questions, especially those of first impression,[3] can prove to be complex, the District Court may wish to appoint counsel to represent Alexander, who is proceeding in forma pauperis. Further, because of the additional passage of time and the possibly modified factual record below, revisiting the Zadvydas claim (which was, after all, dismissed without prejudice to its renewal in a future petition) may prove to be appropriate.[4]

We emphasize that we do not, today, pass on the merits of Alexander's remaining arguments. The Government may be able to easily satisfy its burden of showing compliance with the regulatory regime, and an expanded factual record could reveal that Alexander's detention, even after a year, complies with constitutional, statutory, and regulatory requirements, or is justified by externalities relating to his criminal conviction. Both the materials before us and the state of briefing do not allow us to resolve these questions in the first instance, and we therefore are compelled to return this case to the

---

[3] We do not appear to have discussed the regulatory framework in a previous opinion.

[4] The Government argues that the factual context of this case should be frozen at the time of the petition's filing, and were we inclined to affirm, we might abide by that boundary. Given the indisputably time-sensitive nature of both the case and the underlying claim— for example, Alexander notes in his appellate submissions that his situation has not fundamentally changed since he filed his petition—adherence to formalism would defeat the goals of conserving judicial resources; we do not see the wisdom of compelling Alexander to file a new petition to address the conduct that has transpired since his previous one, while litigating both in parallel. Time also affects another dimension of the case, because Alexander's successful removal would almost certainly moot the claims he raises.

District Court for further proceedings. Thus, for the foregoing reasons, we will affirm in part, vacate and part, and remand.