**Ofer YOSEF, Petitioner,**

v.

**Janice KILLIAN (Warden), et al., Respondents.**

**No. 08 Civ. 11086(SHS)(FM).**

United States District Court, S.D. New York.

Aug. 4, 2009.

Ofer Yosef, Otisville, NY, pro se.

## ORDER

SIDNEY H. STEIN, District Judge.

In a Report and Recommendation dated June 25, 2009, Magistrate Judge Frank Maas recommended that the petition for a writ of *habeas corpus* be denied. After a *de novo* review of (1) Magistrate Judge Maas' Report and Recommendation, (2) petitioner's objections dated July 8, 2009 to the Report and Recommendation, (3) respondents' letter dated July 23, 2009 in response to petitioner's objections, (4) a letter dated July 23, 2009 from Michael Rosenberg is support of petitioner; and (5) petitioner's letter dated July 28, 2009 in reply to respondents' July 23 letter,

IT IS HEREBY ORDERED that:

1. Magistrate Judge Maas' "Report and Recommendation" is adopted;

2. The petition pursuant to 28 U.S.C. § 2241 is dismissed;

3. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir.2007); and

4. Pursuant to 28 U.S.C. § 1915(a) the Court certifies that any appeal from this Order would not be taken in good faith.

SO ORDERED.

## *REPORT AND RECOMMENDATION TO THE HONORABLE SIDNEY H. STEIN AND ORDER*

FRANK MAAS, United States Magistrate Judge.

### I. *Introduction*

Petitioner Ofer Yosef ("Yosef") is serving a 152–month sentence at the Federal Correctional Institution at Otisville, New

York ("FCI–Otisville"). He brings this habeas corpus proceeding, pursuant to 28 U.S.C. § 2241 ("Section 2241"), to challenge the denial of his request to be transferred to Israel, his country of citizenship, in accordance with the Transfer of Offenders to or from Foreign Countries Act, 18 U.S.C. § 4100 *et seq.* ("Act").

In his petition ("Petition" or "Pet."), Yosef contends that the Act and its implementing regulations are void for vagueness, and that the denial of his request for transfer was improperly "capricious and subjective." (Pet. ¶ 12(A), (B)). He further asserts that he is entitled to specific performance by the United States under the transfer provisions of the Act. (*Id.* ¶ 12(C)). Finally, Yosef alleges that his detention in a country other than that of his citizenship amounts to cruel and unusual punishment in violation of the Eighth Amendment because he has been isolated from his family, friends, and community. (*Id.* ¶ 12(D)).

For the reasons set forth below, the Petition should be denied.

## II. *Background*

On October 22, 2003, after a jury trial in the United States District Court for the Eastern District of New York, Yosef was convicted of one count of conspiracy to commit wire fraud, two counts each of extortion by interstate communications and making false statements, and four counts of wire fraud. (*See* Ex. 1 at 1).[1]

He was sentenced to 151 months of imprisonment. (*Id.* at 2). On September 13, 2004, the Second Circuit affirmed his conviction, which arose out of the operations of a moving and storage company. (Pet. ¶ 9; Exs. 6, 7).

On January 12, 2004, in the Eastern District, Yosef entered a plea of guilty, apparently in an unrelated case, to one count of attempted fraudulent use of an alien registration card. (Ex. 2 at 1). He was sentenced to seven months of imprisonment, six of which were to run concurrently with his previous sentence. (*Id.* at 2). Assuming he receives projected good-time credits, Yosef could be released as early as January 1, 2014. (*See* Resp't's Mem. at 3).

■ On November 17, 2005, Yosef submitted to the Federal Bureau of Prisons a Transfer Inquiry form in which he indicated that he wished to be transferred to Israel to serve the remainder of his sentence. (Ex. 3). Accordingly, Yosef's case manager at FCI–Otisville compiled a case summary outlining such information as his marital status, employment, educational, and criminal history, prison behavior, and medical and psychological condition. (Ex. 4). The case manager sent the case summary to the International Prison Transfer Unit ("IPTU") at the United States Department of Justice. (*See* Return ¶ 5).[2]

---

1. Unless otherwise indicated, "Ex." refers to the exhibits annexed to the Respondent's Return.

2. Yosef argues that the Respondents' Return is *improper* because it addresses only his claim seeking specific performance. (Reply at 4). Citing 28 U.S.C. § 2248, Yosef contends that the remaining allegations in his Petition should be accepted as true, and that the Return should not be read in conjunction with the Respondents' Memorandum of Law. (*Id.* at 4–5). In advancing these arguments,

Yosef misconstrues Section 2248. That statute provides that "[t]he allegations of a return to the writ of habeas corpus ... if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." Accordingly, the burden is on the petitioner to refute the allegations in the return, not on the respondent to refute allegations in the petition. Yosef's disagreements with the Respondents' recitation of facts are noted in this Report and Recommendation to the extent they are relevant.

After reviewing Yosef's case, the IPTU advised the Israeli Ministry of Justice, by letter dated June 13, 2006, that the United States had denied Yosef's transfer request. (Ex. 5). The letter stated that the denial was based on "the seriousness of the offense[s], . . . [Yosef's] fraudulent conduct[,] . . . [his] use [of] a fraudulently obtained alien registration card . . . [, and his] poor rehabilitative potential in light of his obstruction of justice and misconduct in prison." (*Id.*).[3] The IPTU noted that there was no avenue of administrative appeal from the decision, but that Yosef could reapply for transfer in two years. (*Id.*).

On April 8, 2008, Yosef's counsel, herself a former chief of the IPTU, reapplied for his transfer to Israel. (Ex. 6; Reply Ex. G). On May 19, 2008, the IPTU completed an addendum updating Yosef's prior case summary. (Ex. 7). The addendum noted that Yosef had been the subject of five incident reports which resulted in the forfeiture of a total of 81 days of good time. (*Id.* at 3). Thereafter, by letter dated May 21, 2008, the IPTU advised the Israeli Ministry of Justice that Yosef's transfer request again had been denied because of the seriousness of the offense, but that he could reapply and might be viewed more favorably if his prison disciplinary record improved. (Ex. 8). Yosef also indicates that he requested transfer on at least three additional occasions. (Reply at 8).

 Yosef's *pro se* petition for a writ of habeas corpus is dated November 17, and was filed on December 22, 2008. (*See* Docket No. 1). The matter subsequently was referred to me for a Report and Recommendation on January 7, 2009. (Docket No. 2).[4]

### III. *Discussion*

#### A. *Applicable Law*

 Under Section 2241, a petitioner is entitled to habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A petition under Section 2241 consequently may address issues re-

---

**3.** Yosef disputes the characterization of his "offense" as serious, noting that the Bureau of Prisons classified his offense severity as "moderate" on a Custody Classification Form. (*See* Reply at 7–8 & Ex. D).

**4.** In addition to the relief sought in his Petition, Yosef also has requested that the Court direct the Respondents to produce all documents that they have acquired in this matter, some of which may overlap with documents that Yosef has requested pursuant to the Freedom of Information Act. (*See* letter from Yosef to the Court, dated May 4, 2009 ("May 4 letter")). However, habeas petitioners are not entitled to discovery as a matter of course and must, instead, show "good cause." *See Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). "Good cause" exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908–09, 117 S.Ct. 1793 (internal quotation marks omitted). In the absence of such a showing, the Court may exercise its discretion to deny a discovery request in a habeas proceeding under Section 2241. *Thompson v. Lappin,* Civil No. 07–2694, 2008 WL 2559303, at *2 (D.N.J. June 24, 2008); *see also Gonzalez v. Bennett,* No. 00 Civ. 8401(VM), 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001) (Section 2254 proceeding).

In this proceeding, Yosef alleges that the information he seeks will "illuminate the true essence of the [transfer approval] decision making process." (May 4 letter at 1). As discussed below, however, that process is wholly discretionary. As a result, further insight into the considerations underlying the denial of Yosef's transfer request would not affect Yosef's eligibility for habeas relief. In any event, the Respondents indicate that they already have provided all of the relevant documents to Yosef as attachments to their Return. (*See* letter from AUSA Jean–David Barnea to the Court, dated May 21, 2009, at 2). Yosef's request for discovery therefore should be denied.

lated to prison transfers. *Thompson v. Choinski,* 525 F.3d 205, 209 (2d Cir.2008).

This proceeding concerns a proposed international prison transfer. Such transfers between the United States and foreign nations are governed by the Act, which provides that, pursuant to a treaty, the Attorney General may "transfer offenders under a sentence of imprisonment . . . to the foreign countries of which they are citizens or nationals" and "make regulations for the proper implementation of such treaties . . . and to . . . implement [the Act]." 18 U.S.C. §§ 4102(3), (4).

Significantly, the Act applies "only when a treaty providing for such a transfer is in force." 18 U.S.C. § 4100(a). Here, the United States and Israel are parties to such a multilateral transfer treaty, namely, the Convention on the Transfer of Sentenced Persons, Mar. 21, 1983, T.I.A.S. No. 10,824, Europ. T.S. No. 112 ("Convention"). The Convention entered into force for the United States in 1985 and for Israel in 1998. *See* Council of Europe, Convention on the Transfer of Sentenced Persons, http://conventions.coe.int/Treaty/Commun/ChercheSig.asp?NT=112&CM=8&DF=&CL=ENG (last visited June 24, 2009).

Under the Convention, an offender *"may* be transferred" to another signatory state to serve his sentence, and "may express his interest" in such a transfer. Convention, Art. 2(2) (emphasis added). A transfer can occur, however, only if a series of conditions are met, one of which is that "the sentencing and administering States agree to the transfer." *Id.* Art. 3(1)(f).

The Convention does not outline any criteria that a state must consider in deciding whether to approve an international transfer. Similarly, although the Act authorizes the Attorney General, acting on behalf of the United States, to transfer offenders, it does not contain any limits on the exercise of the Attorney General's discretion. 18 U.S.C. §§ 4102(1), (3).

**B. *Yosef's Claims***

In his Petition, Yosef first asserts that 18 U.S.C. § 4100(b) and the regulations promulgated pursuant thereto, 28 C.F.R. §§ 527.40–527.44, are void for vagueness. (Pet. ¶ 12(A)). In that regard, he further alleges that he "has been denied transfer . . . for subjective reasons not contemplated by law or by congressional intent," even though he has complied with the criteria promulgated in the "applicable code sections." (*Id.*).

Yosef next claims that the Respondents "have failed to promulgate specific rules so that an ordinary person may comply with criteria for [t]reaty [transfer]." (*Id.* ¶ 12(B)). He also asserts, with respect to this claim, that the Respondents actions are "capricious and subjective in that they routinely grant treaty transfers to [o]ffenders and deny such to others without consistency," and that they also have not provided a right to appeal from their decisions. (*Id.*).

Additionally, Yosef contends that he is entitled to specific performance by the United States of the transfer provisions of the Act. (*Id.* ¶ 12(C)). In connection with this claim, he alleges that the Convention and Act provide greater protection for United States citizens who seek to be repatriated to this country than it does for foreigners incarcerated here who seek to be sent to their home countries. (*Id.*). According to Yosef, "the rules as promulgated" nevertheless require his transfer. (*Id.*). He contends that the Respondents therefore should be compelled to comply. (*Id.*).

Finally, Yosef argues that the denial of his transfer requests amounts to cruel and usual punishment because he has not been able to visit with his wife, child, or parents.

(*Id.* ¶ 12(D)). He contends that the disparity between his ability to have contact with his family, friends, and community and that of non-foreign prisoners is unconstitutional. (*Id.*).

### C. *Respondents*

■ The Respondents maintain, as a preliminary matter, that the only proper respondent in a Section 2241 proceeding brought by a prisoner is the warden of the institution where the petitioner is held. (Resp't's Mem. at 1 n. 3) (citing *Gordon v. Lappin*, No. 07 Civ. 10948(RWS), 2008 WL 4179233, at *2 (S.D.N.Y. Sept. 10, 2008)). Accordingly, they seek the dismissal of Yosef' s petition insofar as it names respondents other than Janice Killian ("Killian"), the warden of FCI–Otisville. (*Id.*).[5] Yosef counters that the statute does not limit the potential respondents, and that his Petition does not challenge solely his direct physical confinement, as in *Gordon*, but, rather, also addresses broader issues relating to the denial of his transfer. (Reply at 9–10).

The Supreme Court has held that "there is generally only one proper respondent" in a federal habeas petition, which is "the person who has custody over [the petitioner]." *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) (quoting 28 U.S.C. § 2242). Consequently, the respondent typically must be the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435, 124 S.Ct. 2711. The only exceptions to this rule arise in cases involving nonphysical custody or in which the petitioner is moved from the district after the suit is filed. *See id.* at 454, 124 S.Ct. 2711 (Kennedy, J., concurring).

Neither exception to the immediate custodian rule is applicable here. Nonetheless, "[if] a pro se litigant pleads facts that would entitle him to relief, [his] petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." *Thompson*, 525 F.3d at 209. In this proceeding, although Killian may be the only proper respondent in a habeas proceeding under Section 2241, the Attorney General and other Department of Justice officials that Yosef names might be appropriate respondents insofar as he seeks mandamus based on his allegations that the respondents failed to perform their non-discretionary, ministerial duties. *See* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."); *see also Marquez– Ramos v. Reno*, 69 F.3d 477 (10th Cir. 1995) (mandamus to compel Attorney General to transfer petitioner to Mexico to complete prison sentence); *Scalise v. Thornburgh*, 891 F.2d 640 (7th Cir.1989) (appeal from mandamus compelling Attorney General to issue regulations under the Act). Accordingly, the Petition need not be dismissed as to the respondents other than Killian on this procedural ground.

### D. *Standing*

■ The Respondents also contend that Yosef lacks standing to challenge the

---

**5.** In his petition, Yosef also names as respondents Michael Mukasey (then the Attorney General), Maureen Killion (Director of the Office of Enforcement Operations, DOJ), John Keeney (Deputy Assistant Attorney General— Criminal Division, DOJ), and Alice Fisher (Assistant Attorney General—Criminal Division, DOJ), as respondents. (Pet. at 1). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Eric Holder is automatically substituted as the United States Attorney General, and Lanny Breuer is substituted as the Assistant Attorney General for the Criminal Division. (*See* Resp't's Mem. at 1 n. 1–2; Reply at 10).

Convention because it affords him no privately-enforceable rights. (Resp't's Mem. at 5). As they correctly observe, there is a presumption that "treaties do not create privately enforceable rights in the absence of express language to the contrary," even when the treaty may benefit individuals. *Mora v. New York*, 524 F.3d 183, 201 (2d Cir.2008) (quoting *Medellin v. Texas*, 552 U.S. 491, 128 S.Ct. 1346, 1357 n. 3, 170 L.Ed.2d 190 (2008)). Yosef agrees that he does not have standing under the Convention, but alleges that he instead is seeking relief under the Act, which he believes affords him standing. (Reply at 11, 16–17).

Although the Petition is somewhat unclear about the bases upon which Yosef seeks relief, (*see, e.g.*, Pet. ¶ 12(A) ("[p]etitioner has complied with each and every criteria … in the applicable code sections[ ] in order to be granted a transfer pursuant to the Convention")), the Court accepts his representation that his challenge is limited to the Act. (*See, e.g.*, Reply at 11, 15, 21). It is, however, unclear that this materially improves his situation. When a treaty providing for transfer is in force, the Act specifies how the treaty provisions may be implemented, *see, e.g.*, 18 U.S.C. § 4100(b) (transfer must be executed with the offender's consent), but it does not give prisoners any right to be transferred independent of the treaty.

Not surprisingly, courts that have considered the issue have therefore found that individuals do not have the right to compel a transfer under the Act (or, for that matter, the Convention). *See Bagguley v. Bush*, 953 F.2d 660, 662 (D.C.Cir.1991) (no protected liberty interest in a transfer under the Act or Convention); *Scalise*, 891 F.2d at 649 (Section 4102(4) of the Act does not give rise to "a liberty interest in prisoners seeking international prison transfers"); *United States ex rel. Rickard v. Sternes*, 149 F.Supp.2d 437, 451 (N.D.Ill.

2001) ("The Convention imparts no individual right for a foreign national prisoner to be transferred to his home country."); *see also Coleman v. Reno*, 91 F.Supp.2d 130, 132 (D.D.C.2000) (dismissing suit to compel Attorney General to accept custody of United States citizen incarcerated in Canada for failure to state a claim). It follows that Yosef does not have standing in this case to challenge the denial of his request for an international transfer or to seek specific performance under the Act.

## E. *Discretion*

■ In any event, even if Yosef had standing to challenge the Act or Convention, the decision to deny his transfer request was a matter committed to the discretion of the Attorney General and his designees and was not a violation of a nondiscretionary duty. Pursuant to the Act, the Attorney General is *authorized*, but not required, to "act on behalf of the United States as the authority referred to in a treaty" and to "transfer offenders … to the foreign countries of which they are citizens or nationals." *See* 18 U.S.C. §§ 4102(1), (3); *see also* 28 C.F.R. § 0.64–2 (Attorney General may delegate such authority including "specifically the authority to find appropriate or inappropriate the transfer of offenders to or from a foreign country under a treaty"). Similarly, under the Convention, a sentenced prisoner may be transferred only if certain conditions are met, among them that the "sentencing and administering States agree to the transfer." Convention, Art. 3(1)(f). The Attorney General and his designees, as the authorities under the Convention, therefore have the discretion to decide whether a transfer request should be granted.

■ Citing the rule of lenity, Yosef contends that the Attorney General lacks discretion because the Act and its imple-

menting regulations do not expressly mention any "discretion." (*See* Reply at 20–25, 28). It is doubtful that the rule of lenity applies in this context. *See United States v. Santos*, —— U.S. ——, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008) ("The rule of lenity requires ambiguous *criminal* laws to be interpreted in favor of the defendants subjected to them.") (emphasis added). However, even if the rule is properly invoked, it would affect the result "only when, after consulting traditional canons of statutory construction, [the Court is] left with an ambiguous statute." *United States v. Hayes*, —— U.S. ——, 129 S.Ct. 1079, 1089, 172 L.Ed.2d 816 (2009) (quoting *United States v. Shabani*, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994)). In that regard, it is an established rule of statutory construction that the use of the "word 'may' customarily connotes discretion," *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 346, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005), in the absence of indications of legislative intent to the contrary or obvious inferences to be drawn from the structure and purpose of the statute, *United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). Yosef has suggested no reason to believe that Congress intended to depart from the usual rule. Accordingly, any decisions with respect to Yosef's transfer requests were, by virtue of the precatory language of the statute, plainly within the Attorney General's discretion. *See, e.g., Pansing v. Mukasey*, No. 06 Civ. 10214(PAC)(DFE), 2008 WL 3861222, at *1 (S.D.N.Y. Aug. 18, 2008) (granting respondent's motion to dismiss because the denial of an international transfer was a legitimate exercise of discretion); *Romero v. Vasbinder*, No. 06 Civ. 14967, 2006 WL 3313745, at *2, 2006 U.S. Dist. LEXIS 83055, at *5 (E.D.Mich. Nov. 16, 2006) (Act "rests the discretion for such a transfer solely with the Attorney General"); *Johnson v. United States*, No. C05–1204, 2005

WL 3242130, *1–2, 2005 U.S. Dist. LEXIS 34445, at *3 (W.D.Wa. Nov. 30, 2005) (same). Consequently, even if Yosef has met all the conditions for a transfer, as he contends, (*see* Pet. ¶ 12(A)), the Attorney General and his designees had the discretion to deny his request. Moreover, even if the Act and the regulations thereunder are vague as to the bases for making transfer decisions, there is no requirement that the criteria be spelled out more clearly since the decision ultimately is discretionary.

■ In the same vein, it plainly is within the Attorney General's discretion to decide whether to promulgate rules that would further guide the application of the Convention and Act. Pursuant to the Act, the Attorney General is *authorized*, but not required, to "make regulations for the proper implementation of such treaties in accordance with this chapter and to make regulations to implement this chapter." 18 U.S.C. § 4102(4). The Attorney General's failure to do so thus does not provide a basis for relief. *See Scalise*, 891 F.2d 640, 647 ("[W]e conclude that Congress did not intend § 4102(4) to impose a mandatory obligation on the Attorney General to issue substantive regulations."); *Bagguley*, 953 F.2d at 662 (same).

### F. *Judicial Review*

■ Under the Administrative Procedures Act, matters that are committed to agency discretion by law are not subject to judicial review. 5 U.S.C. § 701(a)(2). Accordingly, even when Congress has not affirmatively precluded judicial oversight, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649,

84 L.Ed.2d 714 (1985)). In this case, both the Act and Convention authorize rulemaking as well as transfer upon certain conditions, but neither sets forth the criteria to be employed. Accordingly, whether to grant a transfer application or promulgate regulations is a decision that is not reviewable by this Court. *See Scalise*, 891 F.2d at 648–49; *Bagguley*, 953 F.2d at 662; *Coleman*, 91 F.Supp.2d at 132.

### G. *Eighth Amendment*

 Of course, "judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary." *Cheong Wai Wong v. Warden, FCI Raybrook,* 171 F.3d 148, 149 (2d Cir.1999) (citing *Webster,* 486 U.S. at 603–05, 108 S.Ct. 2047). In an apparent effort to fit within this rubric, Yosef alleges in his Petition that the denial of his transfer request amounts to cruel and unusual punishment, in violation of the Eighth Amendment. (*See* Pet. ¶ 12(D)). Indeed, he analogizes the denial of his transfer to the denial of an inmate's request for appropriate medical care. (*See* Reply at 32). However, "[r]estraints on an inmate do not violate the amendment unless they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain." *Horne v. Coughlin,* 155 F.3d 26, 31 (2d Cir.1998) (internal citations and quotation marks omitted). Here, the Attorney General or his designee decided that a felon who merited a sentence of more than twelve years and who had a less than ideal adjustment to prison life should not be rewarded with a transfer to his home country. This can hardly be characterized as an abuse of discretion. Thus, even if the Court were to assume that Yosef's confinement in an Israeli correctional facility might better facilitate his contacts with his family and community, the denial of his transfer request cannot be said to rise to the level of an Eighth Amendment violation.

### IV. *Conclusion*

For the foregoing reasons, the Petition should be denied. Additionally, counsel for the Respondents is directed to provide Yosef promptly with copies of the unreported decisions cited in this Report and Recommendation. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

### V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Stein. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

June 25, 2009.